## WALWORTH COUNTY BANK VS. FARMERS LOAN & TRUST COMPANY.

Where a railroad company was owing debts, a resolution passed by its board of directors who had authority to manage its affairs, authorizing and empowering its president and vice-president "to enter into such arrangements with its creditors or the holders of its securities for such relief as the circumstances and necessities of the case requires, and to make such stipulations and agreements in the premises as they may deem proper and expedient; is sufficient to confer a *joint* authority on them to sell and dispose of property belonging to the company in payment of its debts.

Where under such an authority the president of the railroad company, sold to a bank, to which it was indebted, with the assent of the vice-president of the company who was also president of the bank and acted for it in making the purchase, a quantity of railroad ties in part payment of the debt. *Held,* That such assent of the vice-president of the railroad company was not a due execution of the power and that he could not act as the agent, both for the bank and the railroad company in making such sale, and that it stood as if made by the president alone, and as such was not within the authority conferred by the resolution.

Where a sale of property belonging to a railroad company was made by its president in part payment of a debt due from the company and which sale was in fact unauthorized; yet if the fact of the sale had been communicated to its board of directors, who had authority to manage its affairs, and was openly talked of at one of their meetings, and they did nothing to disaffirm it, this would be deemed a ratification of the sale.

APPEAL from the Circuit Court for *Racine* County.

This case was before this court at the June term, 1861, and is reported in 13 Wis., 325, to which reference can be had for a statement of the case, as it then appeared. At the second trial, in addition to the resolutions of the railroad company offered in evidence at the former trial, and which that court held did not authorize the president of the company to sell the ties to the plaintiff in payment of its claim against the compan y for the taking and conversion of which this action is brought, the plaintiff gave in evidence a resolution of the board of di rectors of the railroad company, passed January 21, 1858, by which the president and vice president were " authorized and empowered to enter into such arrangements with the credito rs of the company, and the holders of any of its securities, for

such relief as the circumstances and necessities of the company requires, and that they make such stipulations and agreements in the premises as they may deem proper and expedient." The sale in question was made April 29, 1859. The plaintiff offered in evidence another resolution of the board of directors of the railroad company, passed October 26, 1859, whereby its president was authorized to pay off any debts owing by the company, in any securities or other property of the company, at such rate as he might deem advisable." It was also proved that the vice president of the railroad company, Wm. C. Allen, was also the president of the plaintiff, and acted for it in making the purchase in question. A considerable evidence was given to show that the sale thus made by Durand as president, and assented to by Allen as vice president of the railroad company, was afterwards reported to a meeting of the board of directors of the railroad company, and that it and the bill of sale presented to some of them, was never repudiated by them, but no formal action was taken thereon, and it was talked of by them at one of their meetings; that Durand had acted as the general agent and manager of the road and as its financial agent, and had sold property belonging to the company, and that no formal action was ever taken in regard to his acts as such, unless he requested it, but that his acts and doings were usually talked over and canvassed by the board of directors, and his acts had always been formally ratified by them, or acquiesced in. Evidence was given to show the value of the property claimed by the plaintiff. The circuit judge charged the jury that the resolution of January 21, 1858, following the others, and taken with them, gave Durand the power to make the sale in question, Allen being present, and assenting as he did; that the resolution of October 26, 1859, was proper evidence, as tending to show a ratification of the sale; these instructions were excepted to. Also, that if the bill of sale was presented to the individual members of the board while in session, although it might not have been presented to all of them,

and the board took no action repudiating or disapproving of the sale, it would be deemed a ratification of it. To which instruction the defendant excepted.

The plaintiff had a verdict and judgment for the value of the ties.

*Strong & Fuller* for appellant, contended that the resolution of January 21, 1858, did not authorize the sale of the ties to the plaintiff. The power, if any was given by it, was a joint power to Durand and Allen, and Allen who was president of the bank, and vice president of the railroad company could not legally act as agent for both parties. Story on Agency, §§ 30, 210, 212.

*Cary & Pratt*, for respondent, argued that the resolutions given in evidence by the plaintiff, were sufficient to authorize the sale of the ties in question to pay the debt of the company due to the plaintiff.

If the sale was brought before the board of directors at a regular meeting and no action was taken by them repudiating it, their refusal or neglect to act, must be deemed a ratification of the sale. Story on Agency, §§ 253, 259. On the question of ratification they cited, *Bank of U. S. vs. Davis*, 2 Hill, 451; *Dispatch Line vs. Bellamy*, 12 N. H., 205, 236; *Troy R. R. Co. vs. McChesney*, 21 Wend., 296; Story on Agency, § 140, *a–b*; Angell and Ames on Corp., §§ 305, 306, 297, 298, 292, 238.

*By the Court*, PAINE, J. When this case was formerly here, we decided that the president of the railroad company had no power, either by virtue of his office, or of the resolutions of the board of directors which were then relied on, to sell the property in question. On the second trial, the plaintiff introduced a further resolution as follows: "*Resolved*, That the president and vice president be and they are hereby authorized and empowered to enter into such arrangements with the creditors of this company, and the holders of any of its securities, for such relief as the circumstances and necessities of

the company require ; and that they make such·stipulations and agreements in the premises as they may deem proper and expedient."

Although the language of this resolution, is not the most apt that could be used to express an authority to pay off claims of creditors in whole or in part, by an absolute sale of the property of the company, yet we are unable to say that it does not confer that authority. If a creditor is pressing for payment, and the company has any property which it can transfer to him in part satisfaction of his claim, it cannot be said that it is not such an arrangement as the " circumstance and necessities of the company " required. It certainly would come within the language of the last clause of the resolution, that the officers named, might "make such stipulations and agreements in the premises as they should deem proper and expedient."

But this resolution confers a *joint* authority on the president and vice president. And the proof shows that in the execution of this authority, the president alone acted in behalf of the railroad company, the vice president, being the president of the bank which purchased the ties, and acting in the transaction entirely in behalf the bank. The court charged the jury that the resolution gave the president the power to make the sale, the vice president being present and assenting as he did.

This was erroneous. The instruction correctly assumes that the authority conferred was a *joint* authority, and that both must concur in its exercise. But the error consists in saying that the assent to the sale, by the vice president, while acting as the purchasing agent for the bank, was such an assent as amounted to a valid execution of the authority conferred by the resolution, in behalf the rail road company. It is well settled that no person can act as agent for two principals in the same transaction, where interests are antagonistic, so that the duties of the agent to the one are in conflict with his duties to

the other.   Acting as agent both for the buyer and seller is usually given as a plain case, falling within the rule, for the reason that there "is a natural incompatibility between the interest of the buyer and that of the seller."   Story on Agency, §§ 9, 10, 210, 211.   For this reason the vice president of the company could not act as its agent in selling, and as the agent of the bank in buying, and the sale stands therefore as made by the president alone, and would not be within the authority conferred by the resolutions.

Still there was enough evidence upon which the question of ratification should have been submitted to the jury.   If the fact that the sale has been made, was communicated to the board of directors, and openly talked of at one of their meetings, and they did nothing to disaffirm it, it would be deemed to be ratified by them.

The judgment must be reversed, and the cause remanded for a new trial.