The United Brethren Church of New London vs. Vandusen and others.

RELIGIOUS SOCIETY. (1) *Not bound by acts of trustees acting personally, and not at authorized official meeting.*
TRUSTEES. (2) *Cannot bind corporation for adverse interest of their own.* (3) *Their acts, when fraud.* (4) *Effect of fraud on parties thereto.*
ACTION TO ENJOIN COLLECTION OF JUDGMENT. (5) *Cancellation of instrument may be adjudged in, and judgment vacated.*

1. An incorporated religious society cannot be bound by the acts of all its trustees acting personally, nor by the act of a majority of them

convened together, unless they are so convened at an authorized official meeting pursuant to a call addressed to *all* the trustees.

2. Even at such a meeting the trustees cannot act for the corporation so as to bind it for an adverse interest of their own.

3. Where the majority of the trustees of a religious society executed a judgment note in the corporate name to persons who had a claim against the society, constituting a lien on the church building, and included in such note the amount of certain claims in favor of such trustees personally against the society, apparently for the purpose of incumbering the church property and subjecting it to sale: *Held*, that this was a fraud in fact, and a violation of their duty as trustees.

4. The payees of the note so made, who obtained it through their attorney, being constructively, if not actually, parties to the fraud, the whole note is tainted by it; and, in an action thereon, they cannot recover the amount of their own *bona fide* claim included therein.

5. A judgment having been entered on such note, under the warrant of attorney, the society was entitled to have the judgment vacated on motion; but it might also, at its election, bring an action to have the judgment vacated, and the note and warrant of attorney cancelled.

APPEAL from the Circuit Court for *Winnebago* County.

Action brought by the plaintiff against *Vandusen & Taft*, *L. L. Tucker, H. Ketchum, J. F. Jacobus*, and *J. Gardinier*, sheriff of Waupaca county, to enjoin the collection of a judgment. The complaint avers that the plaintiff was, on the 12th day of December, 1870, a religious society duly organized under the laws of this state; that *Tucker, Ketchum* and *Jacobus* were its trustees; that on that day they executed a note, with warrant of attorney to confess judgment thereon, to *Vandusen & Taft* for $1,804.21, due one day after date, with interest at ten per cent.; that on the 18th day of January, 1871, judgment was entered in due form on the note, upon confession by virtue of said warrant, in the Winnebago county court for $1,822.25 and costs; that execution was issued thereon June 1, 1872, to the sheriff of Waupaca county, who had levied upon, and was about to sell, the church property. That said note was signed without any authority granted at any meeting of the board of trustees; that no meeting had been called or held by them for

the purpose of acting upon the matter of issuing said note; that no record of such a meeting was ever made, and the trustees were never empowered by the society to make the note; that at the time the plaintiff was not indebted to *Vandusen & Taft* in any sum, and that they only claimed it was indebted to them in the sum of $438.10, the price of a bell which the complaint averred had been ordered and purchased by one Reeder Smith and donated to the church ; that the trustees *Ketchum* and *Tucker* executed the note for the purpose of defrauding the society, and are interested in it to the amount of the excess thereof over *Vandusen & Taft's* claim; that the note had, since its execution, remained in the hands of Coolbaugh & Son, who acted as attorneys for *Vandusen & Taft*, and also for *Ketchum* and *Tucker;* that *Ketchum* and *Tucker* executed said note and afterwards induced *Jacobus* to sign it for the purpose of defrauding plaintiff.

Prayer, that the note and warrant be declared void, and defendants enjoined from all steps to collect or enforce the judgment or sell the property.

The defendants *Vandusen*, *Taft* and *Ketchum* answered, alleging that authority to sign the note was granted at a proper meeting duly convened for the purpose of acting upon and giving said note; that the church bell was purchased by said Smith, acting as agent for the church or its trustees; that it was indebted to *Vandusen* and *Taft* therefor; and denying that it was not indebted to defendants *Ketchum* and *Tucker*, and denying fraud, etc. ; alleging that plaintiff had adequate remedy at law, and might have moved to set aside the judgment on the note.

On the trial at the circuit, it appeared that no record of any meeting of the trustees, at which action was had upon the claim, or authorizing the execution of the note, could be found, except one entry in the church record, as follows: " A meeting of the trustees of the church, Dec. 5, 1868.   Bro. *Ketchum* was chairman.   Bro. *Tucker*, Bro. P—— are present.   *Resolved,*

That Bro. *Ketchum* examine, or present the authority, and if we are considered liable for the bell,. we will make some terms of indebtedness ; " that one Reeder Smith had ordered the bell from *Vandusen & Taft*, he testifying that he did so for the trustees of the church, supposing *Ketchum* to be an acting trustee ; that *Vandusen & Taft* placed their claim for the bell in the hands of Coolbaugh & Son for collection.   C. Coolbaugh, as witness for the defendants, testified, that after receiving the claim of *Vandusen & Taft*'for the price of the bell for collection, he called on *Ketchum*, one of the trustees, who arranged for a meeting with *Tucker*, one of the other trustees, at *Tucker's* house, in the absence of *Jacobus*, the third, and without notice to him, at which they determined to give the note, and it was signed by them.   *Ketchum* then took the note to *Jacobus*, and induced him to sign it ; that the claim of *Vandusen & Taft* was $438.10 and interest for two years ; that at the meeting, *Ketchum* and *Tucker* each claimed that the church owed them a certain amount, and they resolved to give *Vandusen & Taft* this note for the bell, and to include in it what they claimed the church owed them, and did so, and that Coolbaugh was to hold, and held, the note till judgment was entered upon it.   *Jacobus*, one of the trustees, testified that no meeting of the trustees was called in regard to the note ; that *Ketchum* brought the note to him, and said that he and *Tucker* had got together and signed the note, and wished him to sign it, which he did ; that *Ketchum* at the time said he supposed he was holden for the bell, but the giving of this note would enable him to " stave off " the payment for one year, and that Coolbaugh was meanwhile to hold the note.   There was no evidence of any indebtedness of the church to either *Ketchum* or *Tucker*.   The testimony as to the original purchase of the bell was conflicting, some of it tending to show that *Ketchum* and Reeder Smith had ordered the bell, collected from the citizens by subscription a part of the money to pay for it, and donated the bell to the church. The correspondence in which the bell was ordered was lost;

but the evidence given of its contents tended to show that Smith ordered the bell in behalf of the trustees, and that *Vandusen & Taft* supposed they were dealing with the officers of the church.

The court found as facts, that *Ketchum, Tucker* and *Jacobus* were trustees of the plaintiff; that there appeared no record of any meeting of the board authorizing the giving of the note; that *Ketchum* and *Tucker* fraudulently executed the note ; that *Vandusen & Taft* were parties to the fraud; that the giving of the note, the entry of judgment thereon, and attempt to enforce collection were a fraudulent conspiracy to defraud the plaintiff; that *Jacobus* signed the note knowing it to be fraudulent, at the instigation of *Ketchum ;* that the claim of $438.10 was not a lawful claim against the plaintiff; and as conclusions of law, that the plaintiff was entitled to have the note and warrant of attorney cancelled and declared void, the judgment thereon vacated, and defendants perpetually enjoined from any proceedings to enforce the same.    Judgment on the finding, from which defendants appealed.

*W. P. Coolbaugh,* for appellants, argued that the plaintiff should have moved the court where the judgment was rendered to set aside the judgment.    *Crandall v. Bacon,* 20 Wis., 639; *Lansing v. Eddy,* 1 Johns. Ch. R., 51 ; *Duncan v. Lyon,* 3 id., 351 ; *Foster v. Wood,* 6 id., 88 ; *Bruen v. Hone,* 2 Barb., 587 ; *Lenz v. Charlton,* 23 Wis., 478 ; *McLaren v. Kehlor,* 22 id., 297. The plaintiff should tender the amount actually due, or be denied relief.    The statute vests the management and control of all the temporalities of the church in the trustees (R. S. 1858, ch. 66), and places them under their control.    *Robertson v. Bullions,* 11 N. Y., 243 ; *In re St. Ann's Church,* 23 How. Pr., 285 ; *Gram v. Prussia etc. Society,* 36 N. Y., 161; *M. E. Church v. Sherman,* 36 Wis., 404; *Reformed Dutch Ch. v. Veeder,* 4 Wend., 494 ; *Voorhees v. Presb. Ch.,* 17 Barb., 103 ; *First Baptist Ch. v. Witherell,* 3 Paige, 296, 303 ; *Reformed Dutch Ch. v. Mott,* 7 id., 77.    The court should compel plaintiff to pay for

the bell in any view of the case. *Lee v. Peckham*, 17 Wis., 383.

*Gabe Bouck*, for the respondent, contended, *inter alia*, that the trustees could not act where they had an adverse interest, or for principals whose interests are antagonistic. *Wal. Co. Bank v. Farmers' L. & T. Co.*, 16 Wis., 629 ; Perry on Trusts, §§ 194, 195. And if they could, they should affirmatively show that it was done in good faith. The trustees could not bind the church unless convened as provided by law. R. S. 1858, ch. 66, sec. 12. They must act as a body not individually. *Dennison v. Austin*, 15 Wis., 334.

RYAN, C. J. We do not deem it necessary to decide whether, on the evidence in this cause, the church corporation is liable to *Vandusen & Taft* for the bell. It is certainly doubtful — a proper question of fact for a jury, in a proper action. But it is a question which could not be settled, to bind the corporation, by *Vandusen & Taft's* attorney and two of the trustees of the church, at an informal meeting.

It was very proper for Mr. Coolbaugh, and Messrs. *Ketchum* and *Tucker*, two of the church trustees, in their personal capacity, to debate the question of the liability. But, in the absence of *Jacobus*, the other trustee, and without attempt to notify him, those two trustees could not hold an impromptu meeting of the trustees, to bind the church. And when they met at *Tucker's* house, they met as private persons interested in the subject, but without power to act for the corporation. Under the statute, R. S., ch. 66, sec. 12,* they could call a meeting of all the trustees; and, the meeting being lawfully convened, could bind the corporation within the scope of their authority. But a call is a call of all the trustees, and a lawful meeting is one which

---

*The section referred to reads: "Any two of the trustees may, at any time, call a meeting of the trustees; and a majority of them, being lawfully convened, shall be competent to do and perform all matters and things which such trustees are authorized to do and perform."

all have at least constructive opportunity to attend. A corporation is not represented by every casual meeting of a majority of its governing body. And all the trustees, acting personally, without an authorized and official meeting, could not bind the church, even within the scope of the authority of the trustees. Angell & Ames on Corp., §§ 231, 489, 491, 492; *Dennison v. Austin*, 15 Wis., 334; *Methodist Church v. Sherman*, 36 id., 404.

At the time of the giving of the judgment note for $1,804.21, according to the testimony of their attorney, *Vandusen & Taft's* claim for the bell amounted only to $438.10, with two years' interest — a trifle under $500. The balance of the note was for alleged claims against the church of the two trustees who made the agreement to give the note, which, we are compelled to say, were, to use the mildest language, of a very suspicious nature.

Had the meeting of the trustees *Ketchum* and *Tucker* been an authorized and official one, and had the transaction been otherwise fair, these trustees could not act for the corporation to bind it for an adverse interest of their own. Angell & Ames, §§ 9, 210; *Walworth Co. Bank v. Farmer's L. & T. Co.*, 16 Wis., 629; *Picket v. School District*, 25 id., 551.

But we cannot look upon the transaction as otherwise a fair one. These suspicious claims of the trustees appear to have been then first raised, never to have had any sanction from any one interested except themselves, and to have been included in a note given to the other parties upon another consideration, for the purpose of incumbering the church property and subjecting it to sale so as to divest the title of the corporation. This was in itself a fraud in fact, and a violation of their duty as trustees. We cannot, in justice, say less.

*Vandusen & Taft* were constructively, if not actually, parties to this fraud, and claim to enforce it. And the fraud in part taints the whole note. Story on Bills, § 187; *Swartzer v. Gillett*, 2 Pin. Wis., 238. Having, through their agent, obtained this note including a fraudulent sum for the benefit of others,

they cannot be heard to support it, *pro tanto*, on a *bona fide* claim for their own benefit.

The respondent might have contented itself with a motion to vacate the judgment. But it was entitled, not only to have the judgment vacated, but also to have the note and warrant of attorney cancelled. And this action is properly brought. *Huebschmann v. Baker*, 7 Wis., 542, and cases cited in Vilas & Bryant's note; *Brown v. Parker*, 28 id., 21.

Whether the trustees signing the note would be personally liable to *Vandusen & Taft* (*Dennison v. Austin, supra*), and whether the judgment in this case affects that liability, are questions not raised in the court below or argued at the bar.

*By the Court.*— The judgment of the court below is affirmed.