The South Side Passenger Railway Company *v.* Second Avenue Passenger Railway Company, The Second Avenue Traction Company and The Pittsburg & Birmingham Traction Company. Appeal by South Side Passenger Railway Company. Appeal by Pittsburg & Birmingham Traction Company.

*Street railways—Stock—Lease—Party in equity—Estoppel.*

A street railway company, all of whose stock except five shares is owned by another company, and all of whose property is leased to such other company for a period of 999 years, has no standing to file a bill in equity against a third street railway to prevent an illegal wrongful use of its tracks, especially after it has delayed objecting to such use for fourteen years.

*Street railways—Contract—Estoppel—Corporation.*

A street railway company is estopped from denying the validity of a contract made by its officers, where it appears that after the contract was exe-

cuted and went into operation it was submitted to a stockholders' meeting and no objection was made to it; that it was suggested by the officers of the company, approved by its attorneys and by a large number of its stockholders, and no objection was made to its validity until six years after its execution.

*Street railways—Assigns—Contract.*

A street railway company which owns all the stock of a second company and has a lease of all its property and franchises for 999 years, and an assignment of such lease, is an " assign " of the second company within the meaning of an agreement which provides that the terms thereof shall " be binding upon the parties hereto, their successors or assigns."

*Street railways—Agreement as to use of tracks.*

Where a street railway company licenses a second railway company or its assign to use its tracks, under an agreement which provides that the second company shall pay one half the cost of construction of the portion of the road used, the second company has a right to use the tracks for its own natural increase, but not for an increase arising from the leasing of a large number of other lines.

Argued March 9, 1899.   Appeals, Nos. 76 and 87, Oct. T., 1898, by South Side Passenger Railway Company and Pittsburg and Birmingham Traction Co., from decree of C. P. No. 2, Allegheny Co., April T., 1897, No. 552, on bill in equity.   Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ.  Reversed in part.

Bill in equity for an injunction and for an account.

WHITE, P. J., filed the following opinion:

The bill in this case was filed March 10, 1897, alleging that the plaintiff company was the owner of the tracks on Second avenue, between the Tenth street bridge and Grant street and Market street, in the city of Pittsburg; that the Second Avenue Passenger Railway Company and the Second Avenue Traction Company have been using these tracks for some years, under a pretended agreement between the Pittsburg & Birmingham Traction Company and the Second Avenue Passenger Railway Company, dated November 9, 1891; that said agreement was never signed by the plaintiff company and is invalid; and praying that these defendants be enjoined from using the said tracks and account for profits.

The Pittsburg & Birmingham Traction Company filed a cross-bill, admitting that the tracks belonged to the plaintiff company, and alleging that said agreement of November 9, 1891, was made by the officers of the Pittsburg & Birmingham Traction Company, but without authority, and was never ratified by the stockholders of that company; also, that the said Second Avenue Traction Company has no rights whatever under that agreement, and, if it has, it is using the tracks to an extent and for purposes not authorized by that agreement, and praying that it be enjoined, etc.

This contention, therefore, hinges on the validity, or proper construction of that agreement. The different counsel have presented requests for findings of fact, quite numerous and various, and some of them, I think, unimportant. Instead of answering these requests in detail, I shall give all the facts which I deem material as to the points in dispute, which I think will be more satisfactory; and all requests not embraced in my findings shall be considered as refused.

### FINDINGS OF FACT.

1. The Pittsburg & Ormsby Passenger Railway Company was chartered to construct a passenger railway from Ormsby borough to Market street, in Pittsburg, crossing the Monongahela river at the Birmingham bridge, at Tenth street, Pittsburg, and along Second avenue to Grant street, and thence to Market street. The road was constructed in 1871, and horse cars were running thereon. In 1874, on a mortgage of that company, its franchises, road, equipment, etc., were sold, and under the purchase at sheriff's sale a new company was organized, called the South Side Passenger Railroad Company, which took possession and ran the road until 1881, when the Pittsburg & Birmingham Passenger Railway Company was organized. That company bought all the shares of the stock of the South Side Passenger Railroad Company, except five shares, the owner of which is uncertain, and has never appeared objecting to any of the subsequent proceedings, and is not a party to this proceeding. The Pittsburg & Birmingham Passenger Railway Company took possession of the road and ran it until 1889, when the Pittsburg & Birmingham Traction Company was organized, and took, by transfer, all the stock of the Pittsburg &

Birmingham Passenger Railway Company, and also all the stock of the South Side Railroad Company, except the five shares above referred to, and has been running the road ever since.

2. The organizations of the South Side Railroad Company and the Pittsburg & Birmingham Passenger Railway Company have been kept up, but, as all the stock of those two companies, except the five shares of the South Side Railroad Company, above referred to, is owned by the Pittsburg & Birmingham Traction Company, it has entire control of those two companies; it runs the road, takes all receipts, pays all expenses and owns all the cars. It renders no account to these companies, but assumed and pays the obligations of the road at the time it took possession.

3. In 1881 the Second Avenue Passenger Railway Company was chartered, and authorized to construct a passenger railway from Market street in Pittsburg to Glenwood, a distance of five miles, passing along Second avenue. The movers in that enterprise had assurance from W. W. Patrick, president of the Pittsburg & Birmingham Passenger Railway Company, that they should have the use of the tracks on Second avenue, and on to Market street. The Second Avenue Passenger Railway Company completed some of its tracks beyond the Tenth street bridge, and, on January 1, 1883, began running its cars. Under a verbal agreement, without specifying for what length of time, between it and the Pittsburg & Birmingham Passenger Railway Company, it ran its cars on Second avenue, from Tenth street to Grant street, and on to Market street, on a monthly rental of $100, and so continued to run them until the agreement of November 9, 1891.

4. The Second Avenue Passenger Railway Company was chartered under the act of 1879, but, after that act was declared unconstitutional, it accepted the provisions of the act of May 14, 1889. After March 4, 1890, it used electricity instead of horse power.

5. The Pittsburg & Birmingham Traction Company was chartered in 1889, and had transferred to it all the stock of the Pittsburg & Birmingham Passenger Railway Company, and all the stock of the South Side Railroad Company, except the five shares above stated. On the 9th of November, 1891,

that company of the one part entered into the following agreement with the Second Avenue Passenger Railway Company, of the second part.

" Whereas, first party is owner of the right of way and tracks now laid over the following route in the city of Pittsburg, viz. : Beginning on Second avenue at a point opposite the north end of the Tenth street bridge ; thence along Second avenue to Grant street ; thence along Grant street to Third avenue ; thence along Third avenue to Market street ; thence along Market street to Fourth avenue ; thence along Fourth avenue to Grant street ; thence along Grant street to Second avenue ; and thence along Second avenue to the said point opposite the north end of the Tenth street bridge. And whereas, second party is now running its cars over said tracks and right of way under a rental paid to first party and has, with the consent of said first party, erected its poles and trolley wires so that its cars can be and are run by electric power furnished from its power house on Second avenue near Brady street. And whereas, second party desires to secure the right to run perpetually its cars over said right of way without paying rent therefor except as hereinafter specified. And whereas, first party is willing to grant to second party such perpetual running right under the terms and conditions hereinafter mentioned. Therefore this agreement witnesseth : The said party of the first part, for and in consideration of the payments to be made, covenants to be performed and kept by the said second party, does hereby agree : First, that it will reconstruct said railway, along the route mentioned, so as to make it a substantial, first class railway, with a rail weighing not less than sixty-five pounds to the yard ; said work of reconstruction to be done by contract, the work to be let to the lowest responsible bidder who shall be acceptable to the party of the second part, and the prices to be paid for said work to first have its approval. Second. The said first party will also keep and maintain the said road in good condition, and before the tenth of every month render an accurate account of all sums expended for labor and material in said maintenance, during the month previous, one-half of which cost shall be paid by each of said companies. Third. It will pay said second party one-half the cost of the poles, trolley wires and overhead equipment it has erected along said route, and hereafter second party will

maintain and keep in order said poles, trolley wires and over-head equipment, and render an account monthly of said cost of maintenance to first party—first party hereby agreeing to pay second party, on or before the fifteenth of each month, one-half of all sums it has expended during the previous month to keep and maintain said poles, trolley wires, and overhead equipment, in good order, as by the bills rendered.

" The said second party covenants and agrees that in consideration of the payments to be made by the first party, above mentioned, and in further consideration of the agreements made by said first party, for the use of its tracks, that it will—first, pay to the said first party one-half the cost of reconstructing the track along said route, payments to be made monthly, on or before the fifteenth of each month, for all labor and material furnished on the contracts for doing such work during the month previous.    Second. It will furnish all electric power to said trolley wires necessary to move the cars of said first party over said route, free of cost to said first party.    Third. It covenants and agrees that it will not during the existence of this agreement extend its lines or make any contracts so that its cars can be run across the Monongahela river to any point reached by the lines of the first party within the corporate limits of Pittsburg.    Nor will it make any agreement with any other company so that the cars of that company can be run from such competing points over the tracks herein mentioned.    Fourth. It also agrees that the party of the first part shall have the right to run its cars over the tracks owned by the said second party on the following route, when so desired by said first party, on the payment to said second party of such sums as shall be agreed upon by the superintendents of the companies hereto, not to exceed five cents for each trip made by each car, viz.: Beginning on Third avenue at its intersection with Market street, thence along Third avenue to Ferry street; along Ferry street to Fourth avenue; along Fourth avenue across Liberty street to Fourth street; along Fourth street to Duquesne way; along Duquesne way to Water street, returning along Duquesne way to Fourth street; along Fourth street across Liberty avenue to Fourth avenue and along Fourth avenue to Market street.

" It being mutually understood and agreed that should the first party allow any other company not its successor or assign

to use the track controlled by it on said mentioned route, that a proportionate credit shall be allowed the second party upon its payments made for construction and the payments to be made for maintenance.

" This agreement to be binding upon the parties hereto, their successors or assigns, for nine hundred and ninety-nine years from its date, unless sooner terminated by a violation of its covenants by the party of the second part, when it shall terminate within thirty days thereafter upon due notice given it in writing by said first party."

6. The above agreement was made at the instance of the Pittsburg & Birmingham Traction Company, drawn up by the counsel of E. W. Clark & Co., of Philadelphia, who held the major part of the stock, and was approved by the attorneys of the Pittsburg & Birmingham Traction Company. It was supposed at the time to be for the benefit of both companies. The stock was held by a few individuals, nearly all of whom were consulted and approved of the agreement. It was authorized by the directors of the Pittsburg & Birmingham Traction Company at a meeting in 1891, and, at the annual meeting of stockholders October 11, 1892, the president reported the agreement, and the report was accepted and ordered to be filed, without any objection thereto. At a meeting of stockholders in 1896, it was unanimously disapproved.

7. The Second Avenue Passenger Railway Company in 1893 and 1894 acquired, by leases, for nine hundred and ninety-nine years, the following passenger railways, all connecting at Glenwood, namely : Glenwood & Dravosburg Electric Street Railway; Hazelwood, Homestead & Braddock Passenger Street Railway ; Greenfield Avenue Railway; Braddock & Turtle Creek Street Railway ; McKeesport & Reynoldton Passenger Railway. These connections extended beyond Glenwood, to Wilmerding nine miles, to McKeesport seven miles, to Reynoldton seven miles, to Dravosburg six miles, to Braddock five miles, to Homestead three miles, to Turtle Creek three miles.

8. The Second Avenue Traction Company was incorporated in 1894. It purchased all the stock of the railroads mentioned in the preceding finding, except a small portion of the stock of the McKeesport & Reynoldton Railway, and obtained by assignment the leases of the same from the Second Avenue Pas-

senger Railway Company. It also owns all the stock of the Second Avenue Passenger Railway Company, and obtained from it a lease for nine hundred and ninety-nine years, of all its franchises, property and rights whatsoever; and afterwards that company assigned that lease to the Second Avenue Traction Company. The Second Avenue Traction Company owns all the cars running on these roads, and they run without change from Market street to the various termini. In 1891 the Second Avenue Passenger Railway Company ran on these tracks twelve cars. Now there are forty-seven. The Second Avenue Traction Company has been running its own cars from 1894 till the present time, claiming the right to do so under the agreement of November 9, 1891. It does not run the cars of any other road, nor has it made any arrangement with any other road for that purpose.

9. The Second Avenue Passenger Railway Company and the Second Avenue Traction Company have expended over a million dollars in purchasing, leasing and equipping their lines beyond Glenwood, on the faith of the agreement of November 9, 1891, that they could use these tracks for their increased business.

10. The Pittsburg & Birmingham Traction Company, desiring to terminate the agreement of November 9, 1891, on April 1, 1897, tendered to the Second Avenue Passenger Railway Company and the Second Avenue Traction Company, $12,855.71, which it claimed was the entire sum that the Second Avenue Passenger Railway Company had paid in repairs to track, etc., under the agreement of November 9, 1891. This tender was refused by both companies. The Second Avenue Traction Company claims that the amount was, or ought to be, at least $14,500. There was no tender for the electric power used by the Pittsburg & Birmingham Traction Company.

11. The Second Avenue Traction Company does an immense business, far greater than that of the Pittsburg & Birmingham Traction Company, and runs many more cars over the tracks in dispute.

### CONCLUSIONS OF LAW.

1. The South Side Passenger Railroad Company cannot in this proceeding call in question the validity of the charter of the

Second Avenue Passenger Railroad Company; that can only be called in question by another proceeding. The South Side Passenger Railroad Company stood by from 1883 to 1897, without ever raising a question or controverting the right of the Second Avenue Passenger Railroad Company and the Second Avenue Traction Company to run their cars on the tracks in dispute. Of course, it knew and must have known that the cars of the Second Avenue Passenger Railway Company were running on these tracks from 1883, and that the Second Avenue Traction Company was running its cars from 1894, after it had obtained, by assignment, all the rights of the Second Avenue Passenger. Railway Company. All the stock of that company, except five shares which are not represented, was transferred to the Pittsburg & Birmingham Traction Company, and that company also has a lease for 999 years of the entire property of the South Side Passenger Railway Company. That company has, therefore, no substantial or tangible interest in the tracks in dispute which requires a court of equity to interfere between the Pittsburg & Birmingham Traction Company and the Second Avenue Traction Company. From the long lapse of time and the other circumstances connected with this case, the South Side Passenger Railroad Company is estopped from denying the validity of the agreement of November 9, 1891, or the rights of the Second Avenue Traction Company to run on these tracks. That bill is, therefore, dismissed.

2. The more important controversy in this case is raised by the cross-bill of the Pittsburg & Birmingham Traction Company. The contention of that company is that the contract of November 9, 1891, was not authorized by the directors of that company or reported to and approved by a meeting of the stockholders. But the evidence shows that the officers of the Pittsburg & Birmingham Traction Company were the movers for that agreement. It was sanctioned by the attorneys of that road; it was approved before it was made, by all or nearly all of the stockholders of that company, at least by a very great majority of them, and was reported by the president to the annual stockholders' meeting in 1892, when no objection whatever was made to it; and it has been carried into effect fully and completely. The tracks were repaired and put in condition as provided in that contract, the payments were made in pur-

suance of it, and monthly reports have been made in pursuance of that agreement ever since. The road has been in operation under that agreement, without any objection by the Pittsburg & Birmingham Traction Company as to its validity, until this cross-bill was filed, six years after the contract was entered into. Under these facts the Pittsburg & Birmingham Traction Company is estopped from denying the validity of that contract.

It raises the question, also, whether the Second Avenue Traction Company has any rights; denying that it is an assign, properly speaking, of the Second Avenue Passenger Railway Company. It appears from the evidence that the Second Avenue Traction Company owns all the stock of the Second Avenue Passenger Railway Company. It also has a lease from that company for 999 years of all its franchises, property and rights of every kind whatsoever, and an assignment from that company also of that lease. This leaves the Second Avenue Passenger Railway Company without any property or rights whatsoever for 999 years. It is virtually out of existence, except in name, for that period of time, and all its franchises, rights and property of every kind, possessed and exercised by the Second Avenue Traction Company, by virtue of the leases and assignments just mentioned. Therefore, the Second Avenue Traction Company, if not technically, is, at least, actually, and to all intents and purposes, the assign of the Second Avenue Passenger Railway Company.

3. Another question then arises as to the proper construction of that agreement of November 9, 1891. The contract was made in view of the certain natural increase of business in 999 years between Glenwood and Grant and Market streets in Pittsburg. There is nothing specified in it or limited as to the extent of the user or the number of cars that may be used on those tracks. If the Second Avenue Passenger Railway Company connected with other railroads at Glenwood it might, doubtless, have hauled their passengers from Glenwood to Grant street and Market street, but, of course, in that event, there would have been a change of passengers and a change of cars at Glenwood; but, by virtue of the leases that were obtained of these other railroads beyond Glenwood, the Second Avenue Traction Company is now running its cars continuously

from Market street to the termini of those various roads, and the question raised by the Pittsburg & Birmingham Traction Company as to the construction of the agreement is, that that is outside the terms of the agreement. The agreement was simply to run the cars from Glenwood in to Pittsburg. Now, the Second Avenue Traction Company is running its cars continuously from Market street in Pittsburg to those various termini. Let us look at the precise terms of this contract of November 9, 1891. It was evidently based on the idea that the two companies had an equal interest, and would run about the same number of cars, or make about the same number of trips of cars on the tracks in dispute. They were each to pay one half the expenses of reconstructing the railroad; one half the expense of equipping and maintaining the road in good condition; one half the cost of the poles, trolley wires and overhead equipment then erected; one half the expense thereafter of maintaining them and keeping them in good order; the Second Avenue Passenger Railway Company was not to extend its lines or make any contracts to run its cars across the river to any points reached by the lines of the Pittsburg & Birmingham Traction Company, nor make any agreement with any other company so that its cars could run from such competing points; and the Pittsburg & Birmingham Traction Company agreed that if it should allow any other company, not its successor or assign, to use these tracks, a proportional credit should be allowed the Second Avenue Passenger Railway Company on its half of the expense. These provisions clearly indicate that the parties were dealing on the basis of equal interest. No provision is made for either party extending its lines. That does not seem to have been contemplated. The provision that, if the Pittsburg & Birmingham Traction Company should allow any other company to use the tracks, there should be a proportional deduction from what the Second Avenue Passenger Railway Company should pay, most strongly confirms this view. Considering the terms of the agreement of November 9, 1891, and the circumstances under which it was made, to allow the Second Avenue Traction Company, by virtue of its numerous leases of other roads, to run more cars than the number of cars run by the Pittsburg & Birmingham Traction Company over these same tracks, without paying an increased proportion

of the expenses, would be manifestly unfair and inequitable. A just and equitable arrangement would be for the companies to pay the expenses provided for in the agreement in proportion to the number of cars; that is, the number of car trips made by each company over these tracks.

Let a decree be drawn in accordance with this opinion, the Second Avenue Traction Company to pay the costs.

The court entered the following decree :

And now, February 21, 1898, this cause came on to be heard upon the issues joined by the bill, answers and replications, as, also, the cross-bill and answers, and evidence being taken upon all of said issues, and the same being argued by counsel, the court do, on due consideration thereof, order and decree as follows :

1. The court being of opinion that the South Side Passenger Railway Company, the plaintiff in the original bill, cannot in this proceeding, for the reasons given in the opinion, raise the question of the power of the Second Avenue Passenger Railway Company and the Second Avenue Traction Company to run its cars, respectively, over that portion of Second avenue between the Tenth street bridge and Grant street, or question the validity of the charter of the Second Avenue Passenger Railway Company, or the validity of the contract of November 9, 1891, between the Pittsburg & Birmingham Traction Company and the Second Avenue Passenger Railway Company, the relief prayed for in the original bill must be denied, and that bill is hereby dismissed, at the costs of the plaintiff, but without prejudice to the cross-bill and the relief therein prayed.

2. Considering and passing upon the questions raised by the issues under the cross-bill and answers, the court do further decree, for the reasons stated in the opinion, the Pittsburg & Birmingham Traction Company is estopped to deny the validity of the contract of November 9, 1891, between the Second Avenue Passenger Railway Company and the Pittsburg & Birmingham Traction Company.

3. The court find that the Second Avenue Traction Company is, to all intents and purposes, and in legal effect, the assign of the Second Avenue Passenger Railway Company under the said contract of November 9, 1891, of the Second Avenue Passenger Railway Company with the Pittsburg & Birmingham Traction Company.

4. The contract of November 9, 1891, was made on the implied understanding that the two contracting parties would have about an equal use of the tracks between the Tenth street bridge and Grant and Market streets, and each party pay one half the expenses. Since the Second Avenue Traction Company has got control of the roads beyond Glenwood, its use of said tracks is greater than that of the Pittsburg & Birmingham Traction Company, and it should pay a greater proportion of the expenses. And it is now ordered and decreed that the expenses provided for in the contract of November 9, 1891, be apportioned and paid by the two companies in proportion to their use of said tracks; that is, in proportion to the number of car trips made by each company over said tracks; which shall include the cars owned or controlled by each company passing over said tracks; and it is further ordered and decreed that the Second Avenue Traction Company settle with the Pittsburg & Birmingham Traction Company on this basis, for the term from January 1, 1896, to January 1, 1898, and thereafter every month, or at such other times as they may agree upon. If the parties cannot agree upon the amount due January 1, 1898, or upon any period hereafter, or upon any other question arising under this decree, either party may apply to this court for such further order or proceedings as may be necessary. The Second Avenue Traction Company shall pay the costs of the cross-bill, which shall include three fourths of the expenses connected with the taking of testimony.

*Error assigned* among others was the decree of the court.

*J. M. Stoner*, for appellant.—The court failed to notice the distinction, between the ownership of the stock, and the ownership of the property, of a corporation: Humphreys v. McKissock, 140 U. S. 311; Bidwell v. Pass. Ry. Co., 114 Pa. 535; Porter v. Pittsburg, etc., Steel Co., 120 U. S. 670; Pullman Car Co. v. Mo. Pac. Ry. Co., 11 Fed. Rep. 634; Jessup v. Ill. Cent. R. R. Co., 36 Fed. Rep. 741.

The title of the South Side Company to its road on Second avenue cannot be defeated by the doctrine of estoppel: N. Y. & Harlem R. R. Co. v. 42d St. & Grant St. Ferry R. R. Co., 50 Barb. 285; St. Ry. Co. v. Chicago W. D. Ry. Co., 87 Ill.

317; People v. Com'rs of Taxes, 23 Hun, 687; Chicago City Ry. Co. v. Chicago, 90 Ill. 573; St. R. R. Co. v. Morrow, 87 Tenn. 406; Detroit Citizens' St. Ry. Co. v. Detroit, 22 U. S. App. 570; Crest v. Jack, 3 Watts, 238; Hepburn v. McDowell, 17 S. & R. 383; Knouff v. Thompson, 16 Pa. 361; Hill v. Epley, 31 Pa. 334; Richards v. R. R. Co., 137 Pa. 524.

No lease or alienation of the property and franchises of the South Side Passenger Railway Company, such as is alleged by the Second avenue companies, nor any agreement therefor, can be supported under the facts and the law of this case: Cass v. Manchester Iron and Steel Co., 13 Fed. Rep. 167; Metropolitan Elevated R. R. Co. v. Manhattan Elevated R. R. Co., 11 Daly's Rep. 373; Mercantile Library Hall Co. v. Pittsburgh Library Assn., 173 Pa. 30; Martin v. Ry. Co., 14 Phila. 10; South Yorkshire Ry. Co. v. Great Northern Ry. Co., 9 Exch. Rep. 78.

A railroad company cannot make a line of road between terminals different from those prescribed by its charter: Simpson v. Westminster Palace Hotel Co., 8 H. of L. 717; Cohen v. Wilkinson, 13 Jurist, 641; Thomas v. Inter-County St. Ry. Co., 167 Pa. 120.

All obligations for any matter operating against public policy are void: Goodyear v. Brown, 155 Pa. 519; Sterling v. Sinnickson, 2 Southard, 756; Gulick v. Bailey, 5 Halst. 92; Staines v. Wainwright, 6 Bingham, N. C. 174; or of the license laws: De Begins v. Armistead, 10 Bing. 107; Puckett v. Alexander, 102 N. C. 95; or of other statutes: Bank of U. S. v. Owens, 2 Peters, 538; Aubert v. Maze, 2 Bos. & Pull. 371; White v. Buss., 3 Cush. 448; Nash v. Monheimer, 20 Ill. 215; Spurgeon v. McElwain, 6 Ohio, 442; Ernst v. Crosby, 140 N. Y. 364; Riley v. Jordan, 122 Mass. 231; Ashburner v. Parrish, 81 Pa. 52.

Nor can contracts void on the ground of public policy be helped by confirmation, ratification or estoppel: Lancaster County v. Fulton, 128 Pa. 48; Hunter v. Nolf, 71 Pa. 282; Shisler v. Vandyke, 92 Pa. 449; Pearsoll v. Chapin, 44 Pa. 9; Evans v. Dravo, 24 Pa. 62; Peters v. Grim, 149 Pa. 163; Negley v. Lindsay, 67 Pa. 227; Bredin's App., 92 Pa. 241.

Even if the agreement of November 9, 1891, were to be deemed valid, it was made to fit the existing circumstances of the parties to it, and was personal to them, and it could not become vested

in the Second Avenue Traction Company so as to be available and operative to the extent claimed: Brooklyn, etc., R. R. Co. v. Brooklyn City R. R. Co., 51 Hun, 600; A. & O. R. R. Co. v. Sullivant, 5 Ohio, 276; Atkinson v. M. & C. R. R. Co., 15 Ohio, 21.

Finally, under the Act of June 19, 1871, P. L. 1360, sec. 1, which provides that the court may inquire into the facts when the rights of one corporation are invaded by another claiming to have the right or franchise to do the act complained of; and without the aid of that act, it has been held that like relief with that sought in the plaintiff's bill may be had without the intervention of the attorney general of the commonwealth: McCandless's Appeal, 70 Pa. 210; Edgewood R. R. Co.'s Appeal, 79 Pa. 259; Sterling's Appeal, 111 Pa. 35; Phila. v. P. R. R. R., 25 W. N. C. 320; Germantown Ry. Co. v. Citizens Ry. Co., 151 Pa. 138; Penna. R. Co. v. Montg. Co. Pass. Ry. Co., 167 Pa. 62; Lehigh, etc., Co. v. St. Ry. Co., 167 Pa. 79; North Cent. Ry. Co. v. Harrisburg, etc., Elec. Ry. Co., 177 Pa. 142; Cumberland Val. R. R. Co. v. Harrisburg, etc., Elec. Ry. Co., 177 Pa. 155; Scranton & P. Traction Co. v. Del. and Hudson Canal Co., 180 Pa. 642; Hopkins v. Mfg. Co., 180 Pa. 199.

*D. T. Watson,* with him *A. W. Duff* and *Johns McCleave,* for the Pittsburg and Birmingham Traction Company, appellant.— The Second Avenue Traction Company is not within the meaning of the words used, an "assign" of the Second Avenue Passenger Railway Company, under the contract of November 9, 1891, and, even if it was such an assign, it still could have no higher or greater rights thereunder than the passenger railway company itself could have if it was in possession and use of Second avenue under the contract of November 9, 1891, and could not haul over Second avenue the cars of or for the alien and leased lines of the Second Avenue Traction Company: Coney Island, etc., R. R. Co. v. Brooklyn Cable Co., 25 N. Y. St. Rep. 325; Holbrook v. Ins. Co., 1 Curtis (U. S.), 198; Rafferty v. Traction Co., 147 Pa. 590; Chicago Rock Island, etc., Ry. Co. v. Denver, etc., R. R. Co., 45 Fed. Rep. 304.

If it can be an assign, it only has the powers of its assignor, and can only exercise and have the identical rights, and no other, than said assignor had, and this does not include the leasing of

distinct and independent railway companies, and increasing the number of cars in order to accommodate the business of the leased lines: Elliot on Railroads, sec. 451; Union Pac. Ry. Co. v. Ry. Co., 51 Fed. Rep. 309; Funk v. Haldeman, 53 Pa. 249; Lauman v. R. R. Co., 30 Pa. 45; Pullman Car Co. v. Missouri Pac. Ry. Co., 115 U. S. 587.

For failure of consideration the entire contract should be held void. The covenant was void and against public policy, and could not have been enforced by the traction company against the Passenger Railway Company: Bishop v. Palmer, 146 Mass. 474; Leake on Contracts, 779; Beach on Contracts, sec. 1421; Hartford, etc., R. R. Co. v. New York, etc., R. R. Co., 3 Robertson (N. Y.), 411; State v. R. R. Co., 29 Conn. 539; Gibbs v. Baltimore Gas Co., 130 U. S. 410; Nester v. Brewing Co., 161 Pa. 481; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173; South Chicago R. R. Co. v. Calumet Electric St. Ry. Co., 171 Ill. 391.

Neither the Second Avenue Passenger Railway Company nor the Second Avenue Traction Company had or has any lawful right to the use of, or to run cars on, Second avenue, from the Tenth street bridge to Grant street, and the contract of November 9, 1891, is null and void, being ultra vires as to the Second Avenue Passenger Railway Company: Weinman v. Pass. Ry. Co., 118 Pa. 193; Homestead Ry. v. Ry., 166 Pa. 162; Central Transp. Co. v. Pullman Car Co., 139 U. S. 59.

There can be no estoppel as against the Pittsburg & Birmingham Traction Company or the South Side Traction Company from setting up the invalidity of the contract of 1891: McCandless's App., 70 Pa. 210.

The Pittsburg and Birmingham Traction Company did not own the tracks along Second avenue, and could give to its lessee only the rights which it had. The traction company was the owner of ninety per cent of the stock of the South Side Company, and the traction company could not grant away those franchises or rights in them: Pullman's Car Co. v. Missouri Pac. Ry. Co., 115 U. S. 587; Bidwell v. P., O. & E. L. Pass. R. R. Co., 114 Pa. 541; Humphreys v. McKissock, 140 U. S. 304; Morawetz on Corp. secs. 233, 1009; Cook on Stocks and Stockholders, sec. 6.

*W. B. Rodgers,* with him *Geo. C. Wilson, Wm. D. Evans* and *M. W. Acheson, Jr.,* for appellees.—The agreement is valid as respects the Pittsburg & Birmingham Traction Company: 1 Beach on Private Corporations, sec. 227; Nashua, etc., R. R. Co. v. Boston, etc., R. R. Co., 27 Fed. Rep. 821; Kent v. Mining Co., 78 N. Y. 159.

Even if there were a lack of original authority to make this contract, a court of equity will not now disturb it. This upon consideration of estoppel and laches: 4 Thompson on Corporations, sec. 5260; Erie Ry. Co. v. Delaware, etc., R. R. Co., 21 N. J. Eq. 283; Rochdale Canal Co. v. King, 16 Beav. 630; St. Louis, etc., R. R. v. Terre Haute, etc., R. R., 145 U. S. 393; Carr v. Wallace, 7 Watts, 394; Thompson v. Lambert, 44 Iowa, 239; Kent v. Mining Co., 78 N. Y. 159; Graham v. R. R. Co., 14 Fed. Rep. 762; Kneeland v. Gilman, 24 Wis. 39; Mahaska County R. R. Co. v. Des Moines Valley R. R. Co., 28 Iowa, 437; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587; Toll Bridge Co. v. Betsworth, 30 Conn. 380; Ry. Co. v. Bridge Co., 131 U. S. 371.

The agreement is valid also as regards the South Side Passenger Railway Company: Chicago, etc., Ry. Co. v. Union Pacific Ry. Co., 47 Fed. Rep. 15.

The Second Avenue Traction Company is the assign of the Second Avenue Passenger Railway Company, and has succeeded to all the latter's rights under the agreement of November, 1891, and is acting simply within those rights: Rafferty v. Cent. Traction Co., 147 Pa. 579.

As assignee the Second Avenue Traction Company has all its assignor's rights under the agreement of November, 1891.

OPINION BY MR. JUSTICE MITCHELL, May 22, 1899:

This is a bill by the South Side Passenger Railway Company against several respondents, and a cross-bill by one of the respondents against the complainant and the other respondents. The appellants, complainants in the bill and cross-bill respectively, though upon opposite sides of the record in both cases, have the same interest, and are seeking the same relief, and the substantial defendant is the Second Avenue Traction Company. The subject of controversy is the right of the Second Avenue Traction Company to use the tracks of the South Side

Passenger Railway on certain streets in the city of Pittsburg, under an agreement made in 1891 between the Pittsburg and Birmingham Traction Company and the Second Avenue Passenger Railway Company. The court below heard the bill and cross-bill together and delivered one opinion covering both. For convenience we follow the same course.

The court below held, first, that the South Side Passenger Railway Company had no substantial interest in the subject which would justify a court of equity, in view of the delay and other circumstances, in interposing; secondly, that the Pittsburg and Birmingham Traction Company was estopped from contesting the validity of the contract of 1891; thirdly, that the Second Avenue Traction Company was an "assign" of the Second Avenue Passenger Railway Company, within the terms of the contract of 1891.

In these three findings on the facts and the law we concur, and as to them the decree will be affirmed on the opinion of the court below.

The court further found that the agreement of 1891 was "evidently based on the idea that the two companies had an equal interest, and would run about the same number of cars or make about the same number of trips on the tracks in dispute," but as the Second Avenue Company, by reason of its numerous leases of other roads, was now running more cars than the Pittsburg and Birmingham Company, he decreed a "just and equitable arrangement" by which the expenses. should be paid by each in proportion to the number of its cars.

In this, however, the court fell into the serious error of making an arrangement which, however just or equitable as matters would now stand if they were starting de novo, was not at all what was called for by the contract as actually made by the parties. The interest of the parties was not equal, nor was the contract based on any such idea. On the contrary the Pittsburg and Birmingham Company was the owner of the tracks (de facto at least for the term of years) and the Second Avenue Passenger Railway Company was a licensee, or at most a sublessee. The latter had no rights but those the agreement gave it, the former had all the rights of ownership that the agreement did not part with. This is explicitly recognized in the provision that if it should allow any other company as licensee to use

its tracks a proportionate credit should be allowed the Second Avenue Company. The allowance of another company to come in as a licensee was by virtue of the rights of ownership. The latter company had no such rights, and could not divide or share or part with its privileges, except to an assign within the terms of the agreement. No doubt the idea of an equal amount of use was the basis of the proportions of the expense of maintenance the two parties were to bear, but their interests in the corpus of the thing were entirely different. Had the business of the Second Avenue Railway Company, by natural growth, led to more than equal use of the tracks, there could have been no ground of complaint, for however much the idea of equality of use may have influenced the rent to be paid, the license to use was unrestricted as to amount.

This brings us to the really vital question in the case. The use by the Second Avenue Railway Company was without limit as to amount, but it was a use for itself and its own cars. It had a power of growth, but it had no general power of expansion into other fields, or of increase by the absorption of other roads. When it was itself absorbed by the Second Avenue Traction Company, the latter became, as already held, a practical "assign," and as such entitled to the continuance of all the rights and privileges given to its assignor by the agreement of 1891, but to nothing more. It did not thereby step into the agreement as an independent party in its own right, with all its own corporate privileges. As to all those it was still a stranger, and its only place in the agreement was as the locum tenens of its assignor, with only the latter's contract rights. The use of the tracks therefore by the Second Avenue Traction Company for cars which it hauls in the operation of its leased or consolidated lines, other than the Second Avenue Passenger Railway Company, is not merely an increased use of the latter's privilege, but a distinct and independent use outside of the agreement of 1891, and without legal right.

Notwithstanding this conclusion, a court of equity would hesitate to enforce the strict legal rights of the Pittsburg and Birmingham Company to their full extent, after the lapse of time and that company's acquiescence in the use of its tracks and the expenditure of money by the Second Avenue Traction Company. But we are saved any difficulty on that point by

the offer of the Pittsburg and Birmingham Company in its cross-bill to accept "any reasonable arrangement," and the disclaimer by counsel at the argument of any relief sought, beyond a recognition of its rights and adequate compensation for the use of its property.  What the measure of that shall be we have no facts before us to indicate, and all we decide now is that the measure of compensation fixed by the court below was not based on the proper recognition of the rights of the complainant.

So much of the decree as dismisses the bill of the South Side Passenger Railway Company, holds the Pittsburg and Birmingham Traction Company estopped from contesting the validity of the agreement of 1891, and adjudges the Second Avenue Traction Company an assign of the Second Avenue Passenger Railway Company, is affirmed on the opinion of the court below; but the rest of the decree is reversed and a decree directed to be entered in favor of the Pittsburg and Birmingham Traction Company upon its cross-bill against the Second Avenue Traction Company upon the principles indicated in this opinion; costs up to this point to be paid by the Second Avenue Traction Company.