CANNON RIVER MANUFACTURERS' ASSOCIATION *vs.* LUTHER Z. ROGERS.

Argued Nov. 10, 1892. Decided Nov. 28, 1892.

**Evidence Considered.**

Evidence considered, and *held* insufficient to justify submitting a question of fact to the jury.

Appeal by plaintiff, the Cannon River Manufacturers' Association, from an order of the District Court of Rice County, *Buckham, J.,* made May 2, 1892, refusing it a new trial.

By Sp. Laws 1865, ch. 67, the State of Minnesota granted to the Cannon River Improvement Company 300,000 acres of swamp lands to aid in the construction of slack water navigation on the Cannon river, and thence by way of Lake Elysian to the Minnesota river, near Mankato. As often as ten continuous miles of the slack water navigation were completed, the company was to select 25,600 acres of the grant, and the Governor was to convey to it the lands so selected. Twenty miles were to be completed in five years, and the residue in seven years.

By Sp. Laws 1870, ch. 118, the times were extended to ten and fifteen years respectively.

By Sp. Laws 1872, ch. 111, the company were empowered to construct a railroad along the route, instead of a slack water canal.

By Sp. Laws 1873, ch. 110, the company was authorized to consolidate with the Minnesota Central Railroad Company. It did so, and the name of the consolidated company was changed to the Wisconsin, Minnesota and Pacific Railroad Company, but no part of the railroad or canal was then built.

By Sp. Laws 1877, ch. 244, one-twelfth of these swamp lands (25,-000 acres) was donated to the plaintiff, the Cannon River Manufacturers' Association, a corporation organized by the proprietors of the mills on that river, for the purpose of developing and improving its water powers and manufacturing resources.

The defendant, Luther Z. Rogers, was a director and the secretary of the railroad company and held two-fifths of its stock, and in its interest claimed that its rights to the 25,000 acres of swamp

land were not divested by the last above mentioned act. In settlement of this dispute it was agreed on June 5, 1882, between plaintiff and the railroad company, that plaintiff should have the land, but that $19,000 of the money realized from sales of it should be expended in creating reservoirs above the mills at Waterville in Le Sueur county.

On December 28, 1880, William Clark owned a mill, water power, land, and right of flowage on the Cannon river at Waterville, and on that day mortgaged it to defendant to secure the payment of $2,000 and interest. On April 15, 1882, Clark conveyed the property to E. H. Steele, subject to the mortgage, and Steele made a second mortgage on the property to one Small. Rogers attempted to foreclose his mortgage by advertisement under the power of sale contained therein, but the premises were not correctly described in the notice of sale. On March 1, 1884, the premises were sold by the sheriff and bid in by Rogers for $2,589.50. The certificate of this sale, like the notice, misdescribed the property, but the error was not discovered until some time after March 7, 1885.

On November 3, 1884, the plaintiff corporation desired to be released from the obligation to expend above Waterville so much of the proceeds of the lands, and entered into a contract with defendant to buy the Clark mill property of him after his title should ripen under the foreclosure sale, and to pay him for it $6,666.67. He was also to procure the railroad company to pass a formal resolution releasing the plaintiff from its agreement to expend $19,000 above Waterville. The purchase money was to be deposited in the First National Bank at Faribault and paid over to defendant on his producing on or before March 15, 1885, a proper conveyance of a merchantable title, and the release by the railroad company. The contract was evidenced by the resolution of the plaintiff corporation and the receipt of the bank; of which copies are contained in *Cannon River Manufacturers' Ass'n* v. *First Nat. Bank*, 37 Minn. 394.

No redemption was made from the foreclosure sale, and on March 7, 1885, defendant tendered to the bank his deed and tax certificates, and a resolution of the board of directors of the railroad

company releasing plaintiff from its agreement to expend money above Waterville, and demanded the $6,666.67. The bank required defendant to submit the papers to plaintiff. He took them to plaintiff's secretary who accepted them and gave defendant the bank receipt with the secretary's indorsement thereon that the deed, tax certificates and resolution had been delivered, and that the bank's receipt was surrendered. Defendant took the receipt with this indorsement on it to the bank and obtained the money.

The plaintiff soon after discovered the defect in the title to the mill property, repudiated the action of its secretary, on the ground that he had no authority to act for it in this matter, and brought an action against the bank for the money, but was defeated. *Cannon River Manufacturers' Ass'n* v. *First Nat. Bank*, 37 Minn. 394. It then brought this action against Rogers to recover the money paid to him by the bank. It was again defeated and appealed to this court, where the judgment was reversed, 42 Minn. 123. The defendant then interposed a supplemental answer, which was, on motion of plaintiff, stricken out. On appeal to this court that order was affirmed, 46 Minn. 376. Thereafter the defendant was on motion allowed by the trial court to amend his original answer setting up that the contract of June 5, 1882, was in fact made at the request and for the sole benefit of defendant, but in the name of the railroad company; that plaintiff was bound to expend $19,000 at and above Waterville for defendant's benefit; that he agreed to procure a release from this agreement and convey the mill property for $6,666.67; and that after March 15, 1885, plaintiff notified defendant that it would waive the time for the delivery of the deed and resolution; that if he would proceed to correct and perfect the title, it would go on and expend its funds at points below Waterville. That defendant agreed to do so and afterwards performed such agreement, and plaintiff in reliance upon the release and such agreement, expended its funds below Waterville, and that the railroad company had ratified, acquiesced in, and refrained from suit for failing to expend the money at Waterville and above, until the statute of limitations barred an action. That the plaintiff has thus obtained the benefit of the expenditure and is estopped from recovering this

money.   The defendant had a verdict.   Plaintiff moved for a new trial, and, being denied, appealed.

*Geo. N. Baxter*, for appellant.

By former decisions, this court has held that the defendant had not complied *in time* with the requirements of his contract evidenced by the resolution of November 3, 1884, and that he was not entitled to receive or retain the moneys deposited thereunder, and obtained by him from the bank; that the subsequent tenders and offers on his part—the. same not having been accepted—were unavailing; that no acceptance of the release was to be inferred from the fact that plaintiff had expended its funds below Waterville; and that neither the judgment in the bank case, nor the alleged compromise by conversations with the plaintiff's directors, was a bar to the plaintiff's right.   As these decisions rested upon records and agreed facts, it seemed.as if this protracted litigation was at an end.   But the untiring energy and determination of defendant had not yet spent their force.   November 6, 1891, he applied for leave to interpose the answer now in the record, and the court, against our objection and under exception, granted his motion.

There can be no doubt that plaintiff rejected the railroad release. Surely it did not accept it unless it intended to accept it, and it is incredible that it intended to accept it, in view of the suit against the bank and the facts of the case.   The intention of the corporation plaintiff must be judged by its corporate acts and expressions.   The resolution of November, 1884, expressly limits the time for the deposit of the release to March 15, 1885.   By resolution of March 18, 1885, plaintiff expressly directs that if the release deposited at the bank is not in compliance with the terms of the resolution of November 3, 1884, that steps be taken to recover the money deposited. An intention to accept the release cannot even be surmised, from the plaintiff's corporate action, and that alone is to be looked to, and not conversations with, or offers by, its individual directors.

To make out the estoppel it was necessary for defendant to show that plaintiff, by the expenditure of its funds below Waterville, intended to induce him to believe that it had accepted, or was willing

or intended to accept, the release after March 15, 1885, or that its action in the premises was culpably negligent as being naturally calculated to induce such belief, and that by such expenditure it actually did induce the defendant to so believe, and that he acted upon such belief. The proofs adduced do not satisfy any one of the above mentioned requirements.

*Geo. W. Batchelder* and *Edward P. Sanborn*, for respondent.

By the statements and representations of four of plaintiff's directors, who together owned four-fifths of its stock, made after the 23d day of April, 1885, that the plaintiff would not insist on the time for the performance named in the resolution of November 3, 1884, and that all they desired was that the defendant substantially comply, he was induced to believe that the plaintiff had waived the time for performance named in that resolution, and that it was using the $19,000 below the Waterville mill in reliance upon the release which the defendant had obtained from the railroad company and upon his agreement to perfect any defects in his papers, and fully perform his contract. He acted on this belief in paying $1,030 for the Small and Steele claims and obtaining a second release from the railroad company. The plaintiff is thereby estopped to deny that it has waived the time of performance, and is estopped to insist on a technical compliance with the resolution of November 3, 1884. The defendant had a right to rely upon these statements of the four directors of this corporation, and on its action in expending this money below Waterville. These statements were made, and this action of the corporation occurred, after the resolution of March 18, 1885, and after April 6, 1885, when the action against the bank was commenced. No corporation can by agreement made by its officers or agents, which is within its corporate powers, by acquiescence therein and by itself entering upon the performance and taking the benefits thereof, induce the other party to the contract to expend moneys or incur liabilities otherwise unnecessary or to relinquish and surrender valuable rights in reliance upon and in part performance of the contract, and then repudiate it and escape liability thereon on the ground that in obtaining authority to make the agreement it did not itself

comply with some formal rule or regulation with which it might have complied, but which it chose to disregard. The perpetration of such an injustice is no more permitted to a corporation than to an individual. *Zabriskie* v. *Cleveland, etc., R. Co.*, 23 How. 381.

Where a contract is made by an agent of a corporation in its behalf and for a purpose authorized by its charter, and the corporation receives the benefit of the contract without objection, it must be presumed to have authorized or ratified the contract. *Pittsburgh, etc., Ry. Co.* v. *Keokuk Bridge Co.*, 131 U. S. 371; *Bank of Columbia* v. *Patterson*, 7 Cranch, 299; *Bank of United States* v. *Dandridge*, 12 Wheat. 64; *Gold-Mining Co.* v. *National Bank*, 96 U. S. 640; *Pneumatic Gas Co.* v. *Berry*, 113 U. S. 322.

By the receipt and retention of the benefits of its contract with the defendant, the expenditure of all its money in the summer of 1885, for its own benefit and the benefit of its stockholders, the plaintiff is estopped to declare its contract void, because it failed to pass any formal resolution, in express terms authorizing its officers to waive the time of performance. *St. Louis, etc., R. Co.* v. *Terre Haute R. Co.*, 145 U. S. 393; *Central Transp. Co.* v. *Pullman Car Co.*, 139 U. S. 24; *Beecher* v. *Marquette, etc., Mill Co.*, 45 Mich. 103; *Davis* v. *Old Colony R. Co.*, 131 Mass. 258; *Thomas* v. *Citizens' Horse Ry. Co.*, 104 Ill. 462.

It is not necessary in order to create an estoppel that there should have been an actual intent to mislead or deceive the defendant or induce in him this belief. *Beebe* v. *Wilkinson*, 30 Minn. 548; *Coleman* v. *Pearce*, 26 Minn. 123.

GILFILLAN, C. J. All the defenses set up in this case, except that based on the estoppel claimed, were disposed of upon the former appeals, reported in 42 Minn. 123, (43 N. W. Rep. 792,) and 46 Minn. 376, (49 N. W. Rep. 128,) and on the last trial were withdrawn from the jury, only the estoppel claimed being submitted to them. It is therefore unnecessary to allude to the facts upon which those defenses rested, unless so far as may be proper in considering the question whether upon the issue of estoppel there was evidence enough to justify its submission to the jury.

By reference to the case as reported in 42 Minn. 123, (43 N. W. Rep. 792,) it will be seen that the cause of action grew out of the following facts: The plaintiff, on or about November 3, 1884, deposited in the First National Bank of Faribault $6,666.67, to be paid to the defendant, provided that he, on or before March 15, 1885, deposit with the bank, for plaintiff, a warranty deed conveying to it, free of incumbrance, certain real estate, and a certified copy of a resolution by the board of directors of the Wisconsin, Minnesota & Pacific Railroad Company, releasing plaintiff from the covenants and obligation of each and every agreement between plaintiff and the predecessor of said railroad company concerning the application of the proceeds of the land grant to plaintiff. March 7, 1885, defendant deposited with the bank a deed for the real estate, he not having title to it, though he supposed he had, and a certified copy of a resolution by the railroad company, claimed not to be in accordance with the conditions of the deposit of the money, and procured the officers of the bank to pay the money to him. March 18, 1885, plaintiff's board of directors passed a resolution refusing to receive the papers deposited in the bank by defendant, and directing its secretary, who, without authority, had received them, to return them to the bank, and, accordingly, on the 21st they were tendered back to the bank, which refused to receive them. A copy of this resolution was immediately served on defendant. April 6, 1885, plaintiff commenced an action against the bank to recover the money, and that case on appeal is reported in 37 Minn. 394, (34 N. W. Rep. 741.) Defendant knew of and assisted in the defense of that action. This action to recover the money was commenced April 20, 1886. December 23, 1885, defendant, having acquired title to the real estate he was to convey to plaintiff, tendered it a deed conveying the property to it, which deed it refused to accept.

As we held when the case was first here, (42 Minn. 123, 43 N. W. Rep. 792,) defendant had no right to tender performance after March 15th of the condition on which the money in bank was to be paid to him, and that any such tender would be of no effect unless accepted. But it was also said, in substance, that, if plaintiff accepted a part of what defendant was to do, it could not afterwards repudiate what

it had accepted, and recover the money, if defendant was willing, even after March 15th, to make good the remainder.  And we suspect this expression suggested the idea of the estoppel.  There is no claim that plaintiff is estopped to deny anything except that it had accepted the release by the railroad company.  The claim is that by its acts and declarations the plaintiff induced defendant to believe that it had accepted the release, and that, acting upon that belief, and because of it, he secured, at great expense, the title to the land he was to convey to plaintiff.  This title was procured prior to December 23, 1885, so that whatever could be claimed to work an estoppel must have taken place between March 18th and that time.  Unless it be the resolution of plaintiff's board of directors, hereinafter referred to, and the contract made pursuant to it, no affirmative corporate act or declaration of plaintiff is shown which it is claimed would justify a belief that it had accepted the release.  But conversations with each of four of the plaintiff's five directors,—one of them the secretary, and another its treasurer,—to the effect that plaintiff did not insist on the time of performance by defendant, and that, if it had the titles and the release, so that it could devote the money in its hands to improvements upon the stream (the Cannon river) near Faribault, instead of to improvements further up, as plaintiff had agreed with the railroad company to do, it was all plaintiff desired, were proved.  There is no question that a corporation, as well as a natural person, may, by its acts and declarations, estop itself to deny the existence of certain facts.  But to work such estoppel the acts must be done or the declarations made just as its contracts must be made,—by its authorized officers or agents.  There is no evidence in the case that any one of the four directors had any authority to make or vary on behalf of the corporation any contract in the matter between plaintiff and defendant, or to waive any of its rights in respect to such a contract.  So far as appears, the directors could act for the corporation only when met together as a board, and there can be no presumption that either the secretary or treasurer had, as such, authority to make, vary, or waive rights under contracts of the corporation.  As the corporation could be bound, by estoppel or otherwise, only by the acts or declarations of its officers or

agents authorized to bind it, the conversations we have referred to could not be the basis of an estoppel. In submitting the question of estoppel to the jury, the court below charged that the corporation was not bound by the acts or declarations of any but officers or agents authorized to do such acts or make such declarations, but seems to have assumed erroneously that those conversations could have some binding effect on it, or could be taken in explanation of its corporate acts, as showing the reason or motive for them, although the conversations with no one of such directors were ever communicated to the board of directors, nor even to any other director. The declarations were either corporate utterances, or they were in the nature merely of hearsay. And the court was further in error in assuming that the reasons of each of two of the directors not disclosed to the board nor to any other director could be taken in explanation of the action of the board in passing a certain resolution. The reason or motive for passing a resolution might be shown by the discussion had at the board, but certainly not by the secret operation of the mind of individual members.

The resolution and contract, which it is claimed were corporate acts that might be considered on the issue of estoppel, came about in this way: In April, 1884, the plaintiff made a contract with the Polar Star Mill Company, which had a dam on the stream below the point where, under its contract with the railroad company, plaintiff had bound itself to expend the proceeds of its land grant, by which contract the mill company agreed to raise its dam, and procure condemnation of the land needed for the additional flowing, and the plaintiff agreed to furnish the funds needed to pay the damages awarded to the landowners. In May, 1885, the plaintiff's board of directors passed a resolution to make a contract, and a contract was accordingly made between plaintiff and the mill company, modifying the contract of April, 1884. The chief modification consisted in an agreement of plaintiff to pay the mill company a specified gross sum in lieu of its former agreement to pay the damages awarded to the landowners. The resolution for the contract of May, 1885, is not in the record, but the contract is. It makes no allusion to any release by the railroad company, nor to any contract with that com-

pany, nor to the source from which the money plaintiff was to pay was expected to come.    How that contract, merely modifying in that manner an obligation assumed by plaintiff before the transactions between it and defendant, could be relied on for the purpose of an estoppel, as indicating to defendant that plaintiff had accepted or intended to accept the release which, by resolution of its board of directors on March 18th, it had expressly rejected, especially as it was asserting such rejection in the action against the bank, this defendant defending that action, is impossible for us to see.    It appears in the case that after February 7, 1885, plaintiff did no work and spent no money on the part of the stream where, under its contract with the railroad company, it had bound itself to expend the proceeds of its land grant, but has expended all its funds below that part of the stream.    This is also relied on to support the estoppel, the argument being that, taken in connection with what was said to him by the four directors, the defendant might infer that plaintiff discontinued its expenditure on the part of the stream specified in its contract with the railroad company because it deemed itself released from that contract.    It would not be safe to build an estoppel on a party's inference as to the fact.    No reason is shown why plaintiff did not continue its work on the upper part of the stream.    It is left to conjecture or guess.    If conjecture were to be indulged in, it would be as reasonable to suppose that it did not continue that work because the question whether it was released from it was in litigation.

There was no evidence of any corporate act, declaration, or omission that would justify leaving it to the jury to find an estoppel.

Order reversed.

(Opinion published 53 N. W. Rep. 759.)