# ANCHOR STEAM BOTTLING WORKS v. BAUMLE et al. (two cases).

Nos. 5535, 5926.   Opinion Filed February 8, 1916.

(155 Pac. 518.)

1.   **CORPORATIONS—Acts of Officers—Ratification.** M. and B. and wife were all the stockholders of a corporation, the wife being the owner of one chare of the capital stock. All three constituted the board of directors, B. being president, M. vice president, and B.'s wife secretary. M. purchased B's. stock, and on the same day, pursuant to a resolution of the stockholders M., as vice president, and B.'s wife, as secretary, without formal action of the board of directors, made, executed, and delivered to B. a deed in form that of the corporation conveying to him a certain lot belonging to the corporation in part payment of $9,300, which, it was agreed in the stockholders' meeting, the corporation owed B. and which included the amount M. owed B. for his stock. At the same time, they took back from B. a lease on the lot to the corporation, and the corporation as lessee attorned to B. for a year. **Held,** in a suit in ejectment by B. against the corporation for the lot, that by the payment of rent the board of directors ratified the deed, although it took no affirmative action in the matter.

2.   **SAME—Chattel Mortgages.** On the same day, without formal action of the stockholders or board of directors authorizing them so to do, M., as vice president, and the wife of B., as secretary, made, executed, and delivered to B. a promissory note in form that of the corporation for the balance of the indebtedness of $9,300, and at the same time and in the same manner executed a chattel mortgage on the property of the corporation to secure the payment thereof. **Held,** in a suit to foreclose the mortgage by B. against the corporation, that, by paying interest on the debt thereby secured, the board of directors ratified the mortgage although it took no affirmative action in the matter.

(Syllabus by the Court.)

*Error from Superior Court, Pottawatomie County;*
*Geo. C. Abernathy, Judge.*

Action by Louis Baumle against the Anchor Bottling Works.   Judgment for plaintiff, and defendant brings er-

ror.   Ejectment by Louis Baumle and others against the receiver of the Anchor Steam Bottling Works, a corporation.   Judgment for plaintiffs, and defendant brings error.   Affirmed.

*Cutlip & Outcelt,* for plaintiff in error.

*Chas. E. Wells* and *Wells & Lee,* for defendants in error.

TURNER, J.   On February 12, 1912, Louis Baumle, defendant in error, sued the Anchor Steam Bottling Works, plaintiff in error, in the superior court of Pottawatomie county on a past-due promissory note for $3,300 in form that of the defendant, made, executed, and delivered to plaintiff on March 8, 1910, and to foreclose a chattel mortgage of even date, also in form that of the defendant, given to secure the payment of the note. Both note and mortgage were signed:   Anchor Steam Bottling Works, W. H. McNary, Vice President. Attest:   Albertina Baumle, Secretary.   After verified answer filed, in effect a general denial, and a specific denial "that the note and mortgage were ever authorized or ordered to be executed, or any record thereof was ever kept or made by the board of directors or the secretary thereof," and that the same "if executed at all" were executed without consideration and without approval of the board of directors of defendant corporation, there was trial to the court, and judgment for plaintiff, and defendant brings the case here.

On April 16, 1912, Baumle again brought suit in the same court, this time against the receiver of defendant, in ejectment for the east 52 feet of lot 7, block 31 of the amended plat of the city of Shawnee, and set up his title thereto by deed from defendant dated March 8, 1910,

executed the same way.   After verified answer filed, in effect a general denial of the execution of the deed, to which plaintiff replied that the defendant had fully ratified and confirmed all transactions which took place between them on March 8, 1910, by attorning to plaintiff as lessee for more than two years prior to the filing of the suit, there was trial to the court and judgment for plaintiff, and defendant brings the case here, where the two cases have been consolidated.  In both cases the trial court made the same finding of facts.   It reads:

"The court finds:   That on the 8th day of December, 1906, W. H. McNary and J. M. Mans were copartners, doing business under the name and style of the 'Anchor Steam Bottling Works.'   That the partnership owned the east 52 feet of lot 7 in block 31 of the amended plat of the city of Shawnee, together with the improvements thereon, although the title stood in the name of W. H. McNary.   That said partnership borrowed from the plaintiff herein, Louis Baumle, the sum of $3,800, and as evidence of such indebtedness W. H. McNary executed his promissory note for the amount and executed and delivered a mortgage upon the real estate above described as security for payment of said debt to the plaintiff.   That on the 6th day of December, 1907, the Anchor Steam Bottling Works was duly and legally incorporated under the laws of the Territory of Oklahoma with a capital stock of $10,000.   That soon thereafter W. H. McNary conveyed to the Anchor Steam Bottling Works, a corporation, defendant in this case, the real estate above described, subject to the mortgage heretofore mentioned of $3,800, securing the indebtedness to the plaintiff, Louis Baumle, as hereinbefore set forth.   That McNary received as consideration for said property 58 shares of the capital stock of the corporation.   That J. M. Mans and his wife received 42 shares of the capital stock of the corporation.   That the $3,800 indebtedness heretofore

mentioned was never formally assumed by the corporation, but it was the intention and purpose and understanding of all parties concerned that same should be considered a corporate obligation.

"That on the 16th day of January, 1907, Louis Baumle, plaintiff herein, bought from W. H. McNary one share of stock in said corporation, and thereafter the plaintiff loaned to said corporation the sum of $900 and received the note of the corporation as evidence of said indebtedness, and later the said plaintiff became the owner of all the stock heretofore owned by J. M. Mans and wife, a portion of which stock was thereafter issued to Albertina Baumle, wife of the plaintiff. That on the 8th day of March, 1910, the plaintiff and his wife, Albertina Baumle, sold their shares of stock in said corporation to W. H. McNary, who thereupon became the sole owner of all the stock in said corporation, and who soon thereafter issued two shares of stock to Alice McNary, and two shares of stock to William Felshab, neither of whom paid any consideration therefor; the stock being issued to said parties because of the understanding of McNary that three stockholders were necessary. That in a stockholders' meeting held on the 8th day of March, 1910, at which Louis Baumle, W. H. McNary, and Albertina Baumle were present, being the owners of all of the stock in said corporation, it was agreed that the corporation was indebted to Louis Baumle in the sum of $9,300, which included the price which it had been agreed that McNary should pay Baumle for his stock, and also included various sums of money which plaintiff had expended for and on behalf of defendant at various times theretofore. That at said stockholders' meeting held on the 8th day of March, 1910, a resolution was passed authorizing the proper officers of the corporation to convey to Louis Baumle the real estate hereinbefore described for a consideration of $6,000; it being intended that such conveyance should discharge the above mentioned obligation of the corporation to Louis Baumle to

the amount of $6,000. That no action relative to said matter was taken by the board of directors of the said corporation in a directors' meeting. That thereafter and pursuant to the resolution, said deed of conveyance was executed and delivered to Louis Baumle, with the promissory note of said corporation for the amount of $3,300, with interest thereon at the rate of 8 per cent. per annum, and, as security for the payment of said note, executed and delivered to Louis Baumle a chattel mortgage upon the personal property of the corporation. That immediately upon the delivery of the deed above mentioned, Louis Baumle executed to the corporation a written lease for said premises, and said corporation paid the rent on said premises for a period of about one year and up to about one year prior to the filing of this suit. That the corporation paid interest on said $3,300 note for a period of about one year and up to one year prior to the filing of this suit.

"That one the 8th day of March, 1910, the stockholders in said corporation were W. H. McNary, owner of 57 shares; Louis Baumle, owner of 42 shares; and Albertina Baumle, owner of one share. That the directors of said corporation were W. H. McNary, Louis Baumle, and Albertina Baumle. That the officers of the corporation were Louis Baumle, president; W. H. McNary, vice president; and Albertina Baumle, secretary. That no meeting of the board of directors was ever held either for the purpose of authorizing the execution of said deed and said note and chattel mortgage, or to expressly ratify the execution of said instruments."

And concluded as a matter of law:

"That the defendant is estopped to deny the validity of said deed and promissory note and chattel mortgage. That the plaintiff is entitled to have his title quieted in and to the east 52 feet of lot 7, in block 31, of the amended plat of the city of Shawnee."

And:

"That plaintiff is entitled to recover of and from the defendant judgment in the sum of $3,300, with interest thereon from the 8th day of June, 1911, at 8 per cent. per annum. That the chattel mortgage mentioned herein should be foreclosed and the property sold and the proceeds applied in the payment of costs and satisfaction of said indebtedness."

It is, in effect, contended that, inasmuch as the court found the execution of the deed was authorized by the proper officers at a stockholders' meeting only, and that no action pursuant thereto was ever taken at a meeting of the board of directors, and that the execution of the note and chattel mortgage were never authorized either at a stockholders' meeting or at a meeting of the board of directors, the court erred in failing to hold that both deed and mortgage were unauthorized and invalid as against the defendant corporation.

On the other hand, it is contended that, as to the deed, no formal action of the board was necessary, and, if it was, by taking back a lease of the property described in the deed and attorning thereunder to plaintiff, as lessor, "for about one year and up to about one year prior to" the suit, defendant is estopped to deny the validity of the deed, as held by the court. There seems to be no question but that the deed was executed in due form and in compliance with Rev. Laws 1910, sec. 1186; or that it was within the power of the corporation to make if duly authorized. That being the case, no formal action of the board of directors was necessary, and, if it was, by attorning to plaintiff the board was properly presumed to have ratified the deed. *Union Pac. Ry. Co. v. Chicago, R. I. & P. Ry. Co.*, 163 U. S. 564, 16 Sup. St. 1173, 41 L. Ed. 265, was a suit to compel specific performance of a contract by one railroad to give the other the right to run

trains over the road of the former subject to the order of its officers. Speaking to the contract, the court said:

"Was the contract, if within its powers, duly authorized by the Pacific Company? No question arises but that the contract was executed in due form, and, as to the manner in which its execution was authorized, the facts appear to be: On April 22, 1890, the executive committee passed the resolution approving the contracts and authorized the president of the company to execute it, and on the 30th day of the same month the stockholders, at their annual meeting, voted to approve the contracts and the action of the executive committee relative thereto. The board of directors never formally acted. As soon as the contract was executed, the Pacific Company required the Rock Island Company to make proper connections between McPherson and Hutchison, which was done, and the Pacific Company commenced to run over those tracks, and continued to do so until after the dispute between the two companies became flagrant. On the other hand, the Rock Island Company commenced the construction of its road between South Omaha and Lincoln and of the stations and yards at Lincoln on the land of the Republican Valley Company. Appellants contend that the action of the stockholders and the executive committee was ineffectual because the board of directors was the only body that could authorize the president and secretary to make the contract. The contract appearing on its face to have been duly executed, and the parties having entered upon its execution, necessarily with full knowledge on the part of the board of directors of the Pacific Company, the board would be presumed to have ratified it, although it in fact took no affirmative action in the matter. *Pittsburg, C. C. & St. L. R. Co. v. Keokuk & H. Bridge Co.*, 131 U. S. 371, 381 [9 Sup. Ct. 770] 33 L. Ed. 157-160."

In Cook on Corporations, vol. 3, p. 2430, note 4, the learned author, speaking to the point here involved, said:

"A contract between two street railway companies, whereby one is given the right to run its cars over the tracks of the other, is valid, even though it has not been authorized by the board of directors or a meeting of the stockholders; it being shown, however, that the officers made the contract and that it was approved by a majority of the stockholders, and was reported at the next meeting of the stockholders and not objected to, and has been carried into effect and payments made and operations carried on in accordance therewith. *South, etc., Ry. Co. v. Second Ave., etc., Ry. Co.* (1899) 191 Pa. 492, [43 Atl. 346]."

In *Jourdan, Receiver, etc., v. Long Island R. Co.*, 115 N. Y. 380, 22 N. E. 153, in the headnote it is said:

"By the terms of an alleged contract between two railroad corporations, each gave to the other the right to use its tracks and depots, and agreed to run its trains over the tracks of the other; the earnings of the two roads to be divided in certain proportions. In an action against one of the corporations to recover damages for breach of contract, it appeared that it was executed in the name of defendant by its president and secretary, who were also directors, and it was sealed with its corporate seal. Defendants' secretary testified that the contract was drafted in pursuance of negotiations between the parties and the draft was in his office. It was executed with the intention of getting a ratification by the board of directors, but this was not done. It appeared, however, that it was acted upon by defendant in the management of its business; it having complied with its terms for one year, and received for the entire period the benefit of a faithful performance on the part of the other party. *Held,* that a motion for nonsuit, made upon the ground that no valid execution of the contract on the part of defendant had been proved, was properly denied; that the contract, as executed, was presumptively the act of the corporation and the burden was upon defendant of

showing its invalidity in this respect; that the evidence showed conclusively that it was adopted and ratified by defendant in its corporate capacity; that, if it intended to disavow the contract, it was its duty to be active in so doing, and not remain willfully passive in order to profit by an omission or mistake on the part of its officers which it might have prevented."

This is in line with what we held in *Deer et al. v. Fisher et al.*, 22 Okla. 126, 98 Pac. 978. In that case the city, being indebted to the power company, entered into a contract with a paving company to pay for paving between the tracks of the traction company; the power company being interested in procuring it to be done so as to furnish the traction company with power. In a suit by the power company against the paving company and the city, the object of which was to impound the city's warrants and prevent them from being turned over to the paving company in payment for the work, it was urged, among other things, that the president of the power company and of the traction company were one and the same; that he owned a majority of the stock in both concerns, and could not enter into the contract, and the same was not executed by the proper parties. In answer to which, it was held that, inasmuch as the uncontroverted evidence was that the board of directors of the power company subsequently ratified his action, the contract was binding on the company, although it seems the board of directors failed to act in the premises except by ratification.

But it is contended by counsel for defendant that, inasmuch as the findings of fact show that on March 8, 1910, the stockholders of the corporation were W. H. McNary, owner of 57 shares, Louis Baumle, owner of 42

shares, and Albertina Baumle, owner of one share, and at a stockholders' meeting on that day it .was agreed that the corporation was indebted to Baumle in the sum of $9,300, which included the price to· be paid by McNary to him for his stock, and a resolution was passed author-. izing the proper officer of the corporation to convey to Baumle the real estate as aforesaid in payment of $6,000 of the $9,300 due him, which was done and at the same time the note and chattel mortgage herein sought to be foreclosed were executed and delivered to him to secure the payment of the balance, it is thus shown that the property of the corporation was taken to. secure a private debt of one of the stockholders, and hence the note and mortgage sought to be foreclosed are fraudulent and voidable by the corporation before ratification—which the court, he says, expressly found had not been done. But the court made no such finding. What the court expressly found was that no meeting of the board of directors was ever held to ratify either the deed, note, or chattel mortgage. But by further expressly holding that defendant was estopped. to deny the validity of any of those instruments, and that plaintiff. was entitled to have the chattel mortgage foreclosed, the court impliedly found that there were no fraud, and that defendant had ratified the instruments by paying interest on the indebtedness secured thereby for about .one year and up to about one year prior to the filing of this suit. The court was right. 10 Cyc. 1069, says:

"A corporation, like a natural person, may ratify, affirm, and validate any contract made or acted on in its behalf which it was capable of making or doing in the first instance."

It is not contended that the corporation was not capable of making the chattel mortgage in question, but

only that it included a debt not owing by the corporation. And further, at page 1083, Cyc. says:

"When a ratification has taken place in any of the recognized modes, it relates back and is equivalent to an antecedent authority. It estops the corporation from afterwards repudiating the contract which it has thus ratified. It is upon this ground of estoppel that corporations which have received the benefit of an authorized transaction are not allowed, while retaining the benefits, to repudiate the transaction."

And on the next page:

"A ratification also supplies the want of a precedent power; for example, the want of a power regularly conferred by a resolution of the board of directors."

There was not only no fraud in this transaction; but defendants, having received its benefit for about two years, are estopped to repudiate it.

*Salt Company v. Barber,* 58 Kan. 419, 49 Pac. 524. was a suit by Barber as the owner of a promissory note for $3,000 payable to John R. Ranson and by him indorsed to plaintiff. It was signed: "Solomn Solar Salt Company, by E. E. Baker Prest. John R. Ranson, Sec. & Treas." The verified answer, among other things, denied the execution of the note by the corporation. The facts were that the salt company was a corporation, and on the day the note was executed Baker and Ranson and one Porterfield were its sole directors and each the owner of one-third of its capital stock. Baker was president and Ranson was secretary and treasurer. On that day it was agreed among themselves that Ranson sell his stock to the other two directors, which he did, whereupon pursuant to agreement, and as part payment therefor, Baker, as president, and Ranson, as secretary and treas-

urer, executed to Ranson the note in controversy; all three of the directors being present and participating. No evidence was introduced to show that the directors of the company, as a board, ever authorized the execution of the note. On this state of facts, the court so far held there was no fraud in the transaction that the same was not questioned. On estoppel the court said:

"All persons connected with the company in the capacity of officers and stockholders were parties to the transaction in which the note was given. One stockholder, and director as well, sold his stock to the other directors and stockholders, one of whom, as president of the company with the knowledge and at the instance of the other stockholder and director, executed the company's obligation for the stock sold. The company cannot now repudiate its contract. It is estopped from doing so. * * * It is nevertheless the company's obligation, executed upon what is admitted to be a valuable consideration, and now estopped from pleading its lack of authority in the premises. What the rights of dissenting stockholders might be in such case, we need not and do not consider; nor need we consider what the corporation, the legal entity itself, might do in behalf of dissenting stockholders. In this case, there is neither officer nor owner to dissent from what he had not previously given assent."

And so we say that, McNary being the owner of all but one share of the stock, which is owned by Albertina Baumle, and she is not complaining, the defendant is estopped to repudiate the deed in question. And so far as the deed to the land is concerned, no further authority need be cited other than Rev. Laws 1910, sec. 1150, which seems to have crystallized the rule recognized by authorities that:

"Any person or corporation having knowingly received and accepted the benefits or any part thereof of any conveyance, mortgage or contract relating to real estate, shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage or contract, or the power or authority to make or execute the same, except on the ground of fraud. * * *"

That the same rule is substantially the same as to mortgages or contracts on personal property, see 10 Cyc. 181; *Cumberland Coal Co. v. Sherman*, 30 Barb. (N. Y.) 553; *Independent Brewing Co. v. Powers*, 80 Ill. App. 471; *German Nat. Bank v. First Nat. Bank*, 59 Neb. 7, 80 N. W. 48; *Mobile, etc., Ry. Co. v. Owen*, 121 Ala. 505, 25 South. 612; *St. Croix Lbr. Co. v. Mittlestadt, Ex'r*, 43 Minn. 91, 44 N. W. 1079; *Flaherty v. Atlantic Lbr. Co.* 58 N. J. Eq. 467, 44 Atl. 186; *Steinway v. Steinway*, 2 App. Div. 301, 37 N. Y. Supp. 742; *Woodbridge, etc., Co. v. Proprietors of Addison*, 6 Vt. 204; *Walworth County Bank v. Farmers' Loan & Trust Co.*, 16 Wis. 629; *Gordon v. Preston*, 1 Watts (Pa.) 385, 26 Am. Dec. 75.

The judgment is therefore affirmed.

All the Justices concur.