McCRAY v. SAPULPA PETROLEUM CO. et al.

SAPULPA PETROLEUM CO. v. McCRAY

(two cases).

Nos. 14084, 11601, 11602, Consolidated.

Opinion Filed Sept. 25, 1923.

Rehearing Denied Feb. 19, 1924.

Motion to Reconsider Denied April 22, 1924.

Further Rehearing Denied in No. 14084, June 10, 1924.

(Syllabus.)

1. Corporations—Contract to Convey Property—Legal Informalities—Right to Assert — Acts of Stockholders — Binding Effect.

Unanimous consent and acquiescence of the stockholders of a corporation, acted on by the parties concerned to such an extent as to materially change their position, precludes the assenting stockholders as individuals and the corporation as such from afterwards setting up legal informalities in regard to the execution of a contract to convey property of the corporation; but the corporation will not be bound by the individual acts of the majority of the stockholders acting individually and without authority from the corporation where

they do not own substantially all of the stock of the corporation.

**2. Same — Authority of Corporate Officer to Transfer Property to Satisfy Private Debt.**

An officer of a corporation has no general authority to transfer property of a corporation in satisfaction of the officer's individual obligation, and any person entering into a contract with an officer of a corporation under such circumstances does so at his peril and must ascertain that special authority has been conferred.

**3. Same — Authority of Officer to Contract—Approval by Board of Directors.**

Even though an officer of a corporation has general authority to enter into a contract for the corporation without the approval of the board of directors of the corporation, where such officer enters into such a contract with the express agreement that same is to be approved by the board of directors, it will not be binding on the corporation unless approved.

**4. Same — Estoppel of Corporation—Acts of Officers in Own Interest.**

A corporation, as well as an individual, may by its acts and declarations estop its rights to deny the existence of certain facts, but the corporation is not estopped by the acts or misrepresentations of its officers where such officers are known by the other party to be acting for themselves and not for the corporation.

**5. Same — Ratification by Corporation—Requisites.**

In seeking to hold a corporation liable for the acts of the officers of the corporation on the theory of ratification, it must be shown that the corporation knew of the material facts of the alleged original transaction before ratification will be implied, and where the officers of a corporation, having knowledge of the transaction, are adversely interested in the transaction, their knowledge cannot be considered knowledge of the corporation.

**6. Same.**

Ratification on the part of a corporation can never be made by the same persons who wrongfully assume the power to make the contract; in other words, corporate officers cannot ratify their own wrongful acts.

Error from District Court, Creek County; John L. Norman, Judge.

Action by W. S. McCray against the Sapulpa Petroleum Company and others. Judgment for plaintiff for less than asked, and he brings error. (Two appeals by the Sapulpa Petroleum Company against W. S. McCray consolidated therewith.) Affirmed.

Stuart, Sharp & Cruce and West, Sher-

man, Davidson & Moore, for plaintiff in error.

Carroll, O'Meara & Silverman, for defendant in error.

COCHRAN, J. This was an action commenced by the plaintiff in error against the defendants in error for the specific performance of a contract to assign certain oil and gas leases owned by the Sapulpa Petroleum Company. The Sapulpa Petroleum Company is an Oklahoma corporation, and, prior to August, 1919, was owned by W. S. McCray, Birch C. Burnett, and Bates B. Burnett, each owning one-third of the stock in the corporation. In August, 1919, the owners of this corporation decided to incorporate the Cushing Petroleum Corporation, to have a capital stock of $6,000,000, all of which except 280,000 shares of common stock to be paid as the purchase price for the stock in the Sapulpa Petroleum Company, and in pursuance of this arrangement, the Cushing Petroleum Corporation was incorporated under the laws of the state of Delaware with a capital stock of $6,000,000, consisting of 1,000,000 shares of common stock and 200,000 shares of preferred stock. It was agreed that a portion of the stock should be delivered to one Herd as promoter, and the remainder of the stock was to be divided equally between McCray and the two Burnetts, it being agreed that 280,000 shares of the common stock should be donated by the parties to the treasury of the Cushing Petroleum Corporation. The common stock retained by McCray and the Burnetts was to be pooled, but the preferred stock was to be delivered to the parties, McCray being entitled to one-third of the 200.000 shares of preferred stock. It was further agreed that the corporation should issue $600,000 of debenture notes. On September 25, 1919, McCray and the Burnetts delivered all of the stock of the Sapulpa Petroleum Company except one share retained by each of them to qualify them as directors in the Sapulpa Petroleum Company to Herd, and same was by him delivered to the Empire Trust Company to secure the debenture bonds of the Cushing Petroleum Corporation. On September 25, 1919, McCray entered into a written contract with O. S. Kelly, under the terms of which he contracted to sell to Kelly all of his stock in the Cushing Petroleum Corporation for the sum of $250,000, $25.000 of which was paid in cash and the remainder to be paid on a certain date. According to the testimony of McCray, this contract, while taken in the name of O. S. Kelly, was for the use and benefit of Herd and Bates B. Burnett

and Birch C. Burnett. An extension of time was granted for the payment of the money due under the Kelly contract upon the payment of an additional $25,000 in cash, and at the expiration of this extension the remainder of the purchase price for the McCray stock was not paid according to the terms of the contract. McCray thereupon demanded of Herd and the Burnetts his stock in the Cushing Petroleum Corporation, but Herd and the Burnetts declined to deliver same to him. McCray contended that the contract was only an option to purchase and that the failure to comply with its terms by the payment of the balance of the purchase price terminated the contract, and that he was the owner of the stock. The Burnetts contended that the contract amounted to a sale of the stock and that they were simply due him the balance of the purchase price. After considerable negotiations between the Burnetts and McCray, McCray concluded that he could not procure an equitable adjustment of the matter and served notice on the Burnetts and Herd that he would bring suit against the Sapulpa Petroleum Company and Bates B. Burnett, Birch C. Burnett, Anderson T. Herd, Pyne and Quh, and the Cushing Petroleum Corporation for the cancellation of the contract of August 15, 1919, that being the contract under which it was agreed that the stock of the Sapulpa Petroleum Company should be delivered to the Cushing Petroleum Corporation, and that he would ask for the appointment of a temporary receiver for the Sapulpa Petroleum Company. When this notice was served, Birch C. Burnett entered into further negotiations with McCray for a settlement of the controversy between them relative to the purchase of the stock of McCray in the Cushing Petroleum Corporation, or, as contended by the Burnetts, for a settlement of the balance due to him for his stock. McCray proposed to settle the matter by accepting cash for $153,967.-18, and to take the note of Anderson T. Herd for $50,000 to be secured by $100,000 of preferred stock of the Cushing Petroleum Corporation, and that the Cushing Petroleum Corporation should indemnify McCray in the sum of $11,563.93 on notes and accounts of the Sapulpa Petroleum Company which McCray had indorsed and any claims which the Cushing Petroleum Corporation, or its individual stockholders, had on certain leases in Creek county were to be released.

Birch C. Burnett advised McCray that he and Bates B. Burnett and Anderson T. Herd were unable to pay the cash mentioned in the McCray proposal, and agreed in lieu thereof to deliver to McCray two leases owned by the Sapulpa Petroleum Company, to wit, Timothy lease and Susan Cedar lease. McCray accepted this modification of the proposal and it was agreed between Birch C. Burnett and McCray that Birch C. Burnett would communicate with the officers of the Cushing Petroleum Corporation and let McCray know what would be done. It was also agreed that the assignment of the two leases owned by the Sapulpa Petroleum Company was to be authorized by a resolution by the board of directors of the Cushing Petroleum Corporation and the board of directors of the Sapulpa Petroleum Company. This agreement was made about April 8, 1920. Birch C. Burnett then left for New York, and McCray immediately took charge of the two leases. Some days thereafter Birch C. Burnett wired McCray that the resolution had been passed by the board of directors of the Cushing Petroleum Corporation, and about April 24, 1920, mailed to McCray a copy of what purported to be a resolution adopted by the board of directors of the Cushing Petroleum Corporation. As a matter of fact, the board of directors of the Cushing Petroleum Corporation took no action in regard to this matter and the resolution had not been adopted by them. The purported resolution mailed by Birch C. Burnett to McCray did not purport to bear the signatures of the officers of the corporation or to be certified in any manner, the places for the signatures of the officers and signature to the certificate being blank. The record does not disclose that any of the other directors of the Cushing Petroleum Corporation had any knowledge of the mailing of this resolution by Birch C. Burnett to McCray. It does not appear that Bates B. Burnett, who was also a director in the Cushing Petroleum Corporation, was advised by Birch of the proposition made by him to McCray when Birch arrived in New York, but he did not consent to the same or have knowledge of the mailing of the resolution or the representations made relative thereto. Birch returned from New York about June 1st and stated to McCray that immediately upon the arrival of Bates from New York they would hold a meeting of the Sapulpa Petroleum Company and pass the necessary resolution and deliver assignments of the leases to McCray. Bates returned from New York on June 10th, and on June 11th, in a conversation with McCray, told McCray that the board of directors of the Sapulpa Petroleum Company would meet the next morning and pass the

resolution and execute the assignment. On the following day Bates and Birch were present with McCray while a Mr. Matson was preparing one of the assignments, and before the assignments were completed Bates stated he had to go home, but would come back on Monday morning and complete the transaction and execute the papers. On Monday morning McCray was advised by Bates and Birch that they were not going to deliver to him the assignments of the leases. At the time McCray took possession of the leases there were four producing wells on the Timothy lease and none on the Cedar lease, and between the time he made the original agreement with Birch C. Burnett and the time of the repudiation of this agreement by the Burnetts he had drilled one or more wells on the Cedar lease, a portion of the money to defray expenses being derived from the sale of the production from the Timothy lease and a portion being advanced by McCray individually. Upon the refusal of the Burnetts to execute the assignments. McCray filed this suit for specific performance of the contract. The trial court sustained a demurrer to the evidence as against the individual defendants, and his action in that regard is not questioned on this appeal. Judgment was rendered for the defendant, the Sapulpa Petroleum Company, denying McCray specific performance of the contract, and judgment was rendered in favor of McCray for the sum of $11,552.06 for expenditures made by him in the development and operation of the leases, from which judgment the plaintiff has appealed.

The plaintiff contends that the contract entered into between Birch C. Burnett and McCray was binding on the Sapulpa Petroleum Company and the Cushing Petroleum Corporation because the testimony shows that Birch C. Burnett, Bates B. Burnett, and Anderson T. Herd were the principal owners of the stock in both corporations as well as members of the board of directors of both corporations, and that the contract made by Birch C. Burnett was for the use and benefit of himself, Bates B. Burnett, and Anderson T. Herd, and entered into for them as well as for himself, and afterwards ratified by them. To support this contention he relies upon the following cases: Anchor Steam Bottling Works v. Baumle, 53 Okla. 103, 155 Pac. 518; Bass & Harbour Furniture & Carpet Co. v. Harbour, 42 Okla. 335, 140 Pac. 956; Solomon Solar Salt Co. v. Barber (Kan.) 49 Pac. 524. The facts in the instant case do not bring it within the rule announced in those cases, as the testimony shows that there were 450 stockholders of the Cushing Petroleum Corporation at the time Birch C. Burnett entered into this agreement with McCray and, in addition to that, the entire stock of the Sapulpa Petroleum Company had been delivered to the Empire Trust Company to hold as trustee to secure a bond issue of $600,000 for the Cushing Petroleum Corporation. It is thus seen that the parties interested in this transaction with McCray were not the owners of all the stock in this corporation.

It is next contended that Birch C. Burnett, being the managing agent for the Sapulpa Petroleum Company and having full charge of its affairs, had authority to make an agreement binding the Sapulpa Petroleum Company to convey the leases in controversy without authority from the board of directors or the corporation of either the Sapulpa Petroleum Company or the Cushing Petroleum Corporation. Even though the general powers given to Birch C. Burnett were sufficient to authorize him ordinarily to make such a contract for the corporation, the contract in this case cannot be sustained on that ground, for two reasons. In the first place, the contract with McCray was primarily for the benefit of the two Burnetts and Herd. While it is contended by the plaintiff that the Cushing Petroleum Corporation and the Sapulpa Petroleum Company were also benefited by this agreement because it presented the filing of the suit which McCray had threatened to file against those two corporations seeking to set aside the agreement of August, 1919, and the appointment of a receiver for the Sapulpa Petroleum Company, it is apparent from the record that the principal controversy was between Birch C. Burnett and Bates B. Burnett and Anderson T. Herd, as the parties claiming the McCray stock under the Kelly contract, and McCray, who was asserting that the Kelly contract was only an option and did did not convey the stock. While the McCray stock in the Cushing Petroleum Corporation was still being withheld from him by the Burnetts and Herd, so far as the Cushing Petroleum Corporation was concerned it mattered not whether McCray was adjudged the owner of the stock of the Burnetts and Herd. This contract made with McCray by Birch C. Burnett was therefore one in which the Burnetts and Herd were personally interested, as distinguished from the interest of the Cushing Petroleum Corporation and the Sapulpa Petroleum Company, and this fact was well known to McCray. The agreement provided for the conveyance of the property of the

Sapulpa Petroleum Company in satisfaction of the differences between McCray and the Burnetts and Herd. Conceding that there was some consideration also moving to the corporation, the adverse interest of the Burnetts and Herd in this contract was such that Birch C. Burnett could not have the right to bind the corporation without the approval of the corporation. It is well settled that an officer of the corporation can have no general authority to transfer property of the corporation in satisfaction of the officer's individual obligation, and any person entering into a contract with an officer of a corporation under such circumstances does so at his peril and must ascertain that special authority has been conferred. McLellan v. Detroit File Works (Mich.) 23 N. W. 321; Hoffman v. Gottstein Inv. Co. (Wash.) 172 Pac. 573; Mooney v. O. P. Mooney Co. (Wash.) 128 Pac. 225.

The agreement was not binding on the corporation without the approval of the corporation for the further reason that the agreement by its terms provided that the transfer of the leases was to be approved and the execution of the assignments authorized by the board of directors of the Cushing Petroleum Corporation and the board of directors of the Sapulpa Petroleum Company, and the case is, therefore, not one where the officer, having the apparent authority to make the contract without further authority, did make such a contract without the approval of the corporation.

The plaintiff next contends that even though the contract was not properly authorized, the same is binding upon both the corporations because the corporations are estopped from questioning the validity of the agreement because of the misrepresentations made by Birch C. Burnett and which were relied upon by the plaintiff. It is well to note in the first place that McCray entered into possession of the leases and began the expenditure of money in the development of the same as soon as he and Birch C. Burnett reached this tentative agreement, which was to be submitted to the corporations for approval, and did not wait to do so until he had been advised of the action of the corporations. Were that fact otherwise, however, it would not change the result in this case. Birch C. Burnett left Oklahoma about the 8th day of April, and about the 24th day of April wired McCray that the resolution had been passed by the board of directors of the Cushing Petroleum Corporation and also mailed what he claimed to be a copy of the resolution of the board of directors. This resolution was not signed by or certified to by any of the officers of the Cushing Petroleum Corporation. There were seven directors of the Cushing Petroleum Corporation and the testimony fails to disclose that any of the other directors had any knowledge or participated in any way in the representations made by Birch C. Burnett or had any knowledge that the resolution had been mailed to McCray. The plaintiff contends, however, that it can be legitimately inferred from the other evidence in the record that Bates B. Burnett and Anderson T. Herd were aware of these communications. Conceding that they were, and even conceding that they were the majority of the directors of the Cushing Petroleum Corporation and of the Sapulpa Petroleum Company, these representations would not be binding upon either corporation as an estoppel. Pomeroy's Equity, section 802, states as follows:

"Equitable estoppel in the modern sense arises from the conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforced by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel."

As we have heretofore pointed out, the two Burnetts and Herd were individually interested in this transaction with McCray. The law requires, and it had been expressly agreed, that under those circumstances the arrangement should be approved by the corporation. All of these facts were known to McCray. Equity and fair dealing do not require under such circumstances that the corporation should be bound by the representations, acts, and conduct of the parties interested in the transaction adversely to the interest of the corporation. To permit a contract to be given effect by estoppel under such circumstances would enable the officers of the corporation who were individually interested in the transaction to do indirectly that which had not been done directly and which under the law and under the contract could not have been done.

In Cannon River Manuf'rs Ass'n v. Rogers, 51 Minn. 388, 53 N. W. 759, the court said:

"There is no question that a corporation, as well as a natural person, may, by its acts and declarations, estop itself to deny the existence of certain facts. But to work such estoppel the acts must be done or the declarations made just as its contracts must be made—by its authorized officers or agents. There is no evidence in the case that any one of the four directors had any authority to make or vary on behalf of the corporation any contract in the matter between plaintiff and defendant, or to waive any of its rights in respect to such a contract. So far as appears, the directors could act for the corporation only when met together as a board, and there can be no presumption that either the secretary or treasurer had, as such, authority to make, vary, or waive rights under contracts of the corporation. As the corporation could be bound, by estoppel, or otherwise, only by the acts or declarations of its officers or agents authorized to bind it, the conversations we have referred to could not be the basis of an estoppel."

In Franklin v. Havalena Mining Co. (Ariz.) 157 Pac. 986, the court said:

"Unless the rule be properly guarded, and the facts of each particular case placed within the required limitations as to when one should be bound by the acts and statements of another, the mere fact that one is an officer or agent of a corporation would empower him indirectly to turn over the entire corporate property of third persons. The officers of corporations are agents and the rule admitting their statements in evidence is founded upon the doctrine of agency, and their declarations, to be binding upon the corporation, must be made in the course of or connected with the performance of the authorized duties of such officers. The statements of Burgoon were not expressly authorized by the corporation, nor were they authorized by implication as the natural and ordinary incidents of the position which he occupied, nor were they connected in any manner with the discharge of any duties by him as an officer or agent of the company."

In Rocky Mountain Fuel Co. v. George N. Sparing Coal Co. (Colo.) 143 Pac. 815, a portion of the syllabus is as follows:

"A corporation is not liable for the acts or misrepresentations of its agent while the agent was known by the other party to be acting for himself, and not for the corporation."

See, also, Continental Baking Powder Co. v. Stoner (Ala.) 53 South. 303.

It is next contended that the facts in this case are sufficient to show a ratification of the contract. There is nothing in the evidence to show a ratification by the corporation unless it can be said that the acts of the two Burnetts, Herd, and Craw-ford amounted to a ratification by the corporation. In this connection, what we have said above about the interest of the Burnetts and Herd applied with equal force, and the only knowledge which the corporations had of the transaction was such knowledge as will be considered imparted to the corporations through the knowledge of these officers of the corporation. Thompson on Corporations, sec. 2030, uses the following language:

"Ratification is never implied where it appears that the corporation was ignorant of the facts which entered into the transaction alleged to be ratified. In seeking to hold a corporation liable for acts of an officer or agent, on the theory of ratification, the proof in order to establish such ratification must show that the corporation knew of the material facts of the alleged original transaction before any ratification will be implied."

The parties having knowledge of this transaction being adversely interested in this transaction, their knowledge cannot be considered as knowledge of the corporation. Wallis v. Heard (Ga.) 86 S. E. 391; Security Trust & Savings Bank of Charles City v. Gliechmann, 50 Okla. 441, 150 Pac. 908; Godley Lumber Co. v. Teagarden (Tex. Civ. App.) 135 S. W. 1109, affirmed by the Supreme Court in 154 S. W. 973. There was no ratification of the contract for the further reason that ratification can never be made on the part of the corporation by the same persons who wrongfully assume the power to make the contract, but the ratification must be by the officer or governing body having authority to make such contract and must be upon full knowledge. This is well stated in Thompson on Corporations, sec. 2002, as follows:

"It must be borne in mind that ratification can never be made on the part of the corporation by the same persons who assumed the power to make the contract; in other words, the corporate officers cannot ratify their own wrongful acts."

Getty v. Barnes Milling Co., 40 Kan. 281, 19 Pac. 617; Martin v. Santa Cruz Water Storage Co., 4 Ariz. 171, 36 Pac. 36; Tracy v. Guthrie, etc., Agricultural Society, 47 Iowa, 27; Oliver v. Rahway Ice Co., 64 N. J. Eq. 596, 54 Atl. 460; Hotchin v. Kent, 8 Mich. 526; Calumet Paper Co. v. Haskell Show Printing Co. (Mo.) 45 S. W. 1115, 66 Am. St. Rep. 425; T. P. Ranch Co. v. Gueydan & Riley (La.) 87 South. 234; Despatch Line of Packets v. Bellamy Man. Co. & Trustees, 12 N. H. 203; Wiggan v. The Elder and Deacons of the First Freewill Baptist Church in Lowell, 8 Metcalf 301; Mc-

Cracken v. The City of San Francisco, 1 Cal. 591; Cushman v. Cloverland Coal & Mining Co., 84 N. E. 759; Teeple v. Hawkeye Gold Dredging Co. (Iowa) 114 N. W. 906; First National Bank of Omaha v. East Omaha Box Co. (Neb.) 90 N. W. 223; Lyndon Mill Co. v. Lyndon Literary & Biblical Inst. (Vt.) 22 Atl. 575; Marsh v. Fulton County (Ill.) 10 Wall. 676; Blood v. La Serena Land & Water Co. (Cal.) 45 Pac. 252; Porter v. Winona & Dakota Grain Co., 78 Minn. 210, 80 N. W. 965; Conqueror Gold Min. & Mill. Co. v. Ashton (Col.) 90 Pac. 1124; Blair v. Brownstone Oil & Refining Co. (Cal.) 143 Pac. 1022.

There is not sufficient evidence in this case to show a ratification by either the Cushing Petroleum Corporation or the Sapulpa Petroleum Company. It is our opinion, therefore, that the trial court correctly held that the plaintiff was not entitled to specific performance of the contract and that the Sapulpa Petroleum Company was entitled to have its title quieted to the property in controversy.

The defendant in error has presented a cross-appeal which attacks the judgment of the trial court in allowing the sum of $11-352.06 to the plaintiff as compensation for expenses in developing the lease in controversy; but the brief of the plaintiff in error does not comply with Rule 26 of this court (87 Okla. xxiii) so that the questions presented to this court for decision can be determined without an examination of the record itself. Such being the case, we decline to disturb the judgment of the trial court as to this item. The defendant in error also asks for a judgment on the supersedeas bond filed by the plaintiff in error, but inasmuch as it appears that it is impossible for this court to determine the amount which may be due to the defendant in error on the supersedeas bond without taking testimony, and, inasmuch as this matter can be well determined in a proper proceeding in the trial court, we decline to pass on that question and to determine the amount to which defendant in error may be entitled on such supersedeas bond.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, HARRISON, and MASON, JJ., concur.